**INTERIOR ALTERATIONS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–2569.

United States Court of Appeals, Tenth Circuit.

July 2, 1984.

Stephen E. Tinkler, Denver, Colo., (Donald R. Carwin, Denver, Colo., with him on briefs) of Tinkler & Carwin, Denver, Colo., for petitioner.

Abby Propis Simms, Atty., N.L.R.B., Washington, D.C. (Peter M. Bernstein, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., with her on brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Petitioner, Interior Alterations, Inc., seeks review of an order of the National Labor Relations Board, NLRB, finding that Petitioner had violated § 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3), by discharging two employees. The NLRB has filed an application for enforcement of its order. We order enforcement.

Interior Alterations is a general contractor specializing in demolition and remodeling of high-rise office buildings and in remodeling commercial properties. The two discharged employees, Stark and Brook-

man, were carpenters and members of the United Brotherhood of Carpenters and Joiners of America, the Union. The collective bargaining agreement in effect between the Company and the Union during the relevant time provided that the carpenters were to perform all work involved in "the unloading, handling, stockpiling and erection of all fabricated materials, such as ... doors...." Although the NLRB found that no procedure for dispute resolution was included in the contract, there was an accepted practice that normally an employee was to attempt to resolve work assignment disputes before going to the Union.

In the summer of 1980, the Company was in the process of renovating separate areas on eleven floors of the Security Life Building in downtown Denver. At this project, laborers regularly performed work which belonged to the carpenters, including the transportation of the doors. Several of the carpenters expressed their dissatisfaction with this situation to Company management and Union officials. Stark's testimony, supported by Company's project manager Albert Cappella, was that he had complained to his superiors that laborers were doing work that belonged to the carpenters. Complaints had also been made to Prickett, the Union business representative.

On September 24, 1980, three of the four carpenters working at the site, dissatisfied with having their work performed by laborers, chose Wallace to serve as steward. Stark was not present at the meeting and it was undisputed that when Brookman located Stark to ascertain whether he had any objections, field superintendent Thom Guggenheim and laborers' foreman, Charlie Trainer overheard the conversation. Tr. 59–60.

The next day, September 25, 1980, Stark and Brookman encountered two laborers with a stack of doors which they said they were taking to storage. Brookman told them to tell the supervisor, Guggenheim, that if they were taking the doors to storage, it was carpenters' work and they were

not supposed to do it. The carpenters then left the area.

A series of conversations took place that morning among Guggenheim, Stark, and Brookman. Guggenheim told them that the doors were intended for the trash, which was the laborers' work. Brookman pointed out that the laborers involved in the incident had told them that they were transporting the doors to storage, which under the agreement, would be carpenters' work. Guggenheim testified that he asked the two of them if they would stop obstructing the job and stop complaining. They said that they would not stop complaining; they felt the work was carpenters' work. Tr. 273–277. After calling Cardone, the Company president, and asking Stark and Brookman again if they were going to stop complaining, Guggenheim fired the two, ostensibly for "lack of production." Tr. 278. As Stark and Brookman left the building, they checked the trash area and there were no doors there. Tr. 69–70, 173–174.

Guggenheim testified that he had recommended termination because they stopped the laborers from working. Cardone, the Company president, testified that he decided to fire Stark because of longstanding objections to his work performance and insubordination. Cardone did not claim such serious problems with Brookman.

On the evidence, the Administrative Law Judge, ALJ, found, and the Board agreed, that the Company violated § 8(a)(1) and (3) by discharging Stark and Brookman for protesting the assignment of unit work to nonunit employees. The Board also found that the Company violated § 8(a)(1) by threatening to discharge the employees for protesting assignment of unit work to nonunit employees and for seeking to implement the terms of the collective bargaining agreement. As the Board found to have occurred in this case, the employer violates the Act when it discharges an employee on the basis of his union or other protected activities.

In determining the Company's reasons for a discharge, the Board may draw

reasonable inferences from the credited evidence and may rely on circumstantial as well as direct evidence. *NLRB v. Montgomery Ward & Co., Inc.*, 10 Cir., 554 F.2d 996, 1002. Factual findings by the Board are entitled to affirmance if supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); see *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488–490, 71 S.Ct. 456, 464–465, 95 L.Ed. 456. The scope of review under the "substantial evidence" standard is a limited one which does not involve a reweighing of the evidence or redetermination of the proper factual inferences to be drawn. *NLRB v. Wilhow Corp.*, 10 Cir., 666 F.2d 1294, 1299; *NLRB v. Montgomery Ward & Co., Inc.*, 10 Cir., 554 F.2d 996, 999.

The Company argues that the ALJ abused his discretion in making Findings of Fact and Conclusions of Law. Therefore, it says that the NLRB could not have followed appropriate standards of review in deciding to accept the ALJ's findings. Although the Company is right that the NLRB is free to draw its own conclusions and is not bound by the findings and conclusions of the ALJ, there is nothing in the record to suggest that the Board failed properly to exercise its discretion.

The Company says that Stark and Brookman's conduct on September 25 was not protected and that the Board failed to consider the conduct and the right of the employer to maintain discipline. It argues that the conduct was not protected because the discharged employees failed to follow accepted procedures for resolving disputes, did not have the right to stop another union from working, and they were insubordinate and had a history of work problems.

The ALJ held that the classification of the work was irrelevant. The Company argues that if the work was properly assigned, Stark and Brookman were not protected in challenging it. The Company argues that the doors were trash and laborers' work. If they were going to storage and were to be reused, the work was that of the carpenters. The Company says that the classification of the work was ambigu-ous and that the Company's interpretation was not unreasonable. The protection of the Act is not dependent on the merits of the underlying complaint. As the ALJ noted, employees are engaged in protected activity when they protest their employer's failure to assign work as required by the collective bargaining contract with the Union. The Board need not find the complaints to be meritorious in order to hold the activity protected. The fact that the complaints were reasonable supports the conclusion that they were founded on legitimate union purposes and were not fabricated for personal motives. *NLRB v. Interboro Contractors, Inc.*, 2 Cir., 388 F.2d 495, 500; see also *NLRB v. H.C. Smith Construction Co.*, 9 Cir., 439 F.2d 1064. The ALJ was correct in finding that the classification was irrelevant. There was no showing of bad faith or personal motivation on the part of the two discharged employees.

The Company says that the ALJ erred in finding that there was no procedure for dispute resolution. The agreement provided for the discretionary appointment by the Union's business representative of a steward to handle problems. The established informal practice was to get in touch with either the supervisor or the business representative concerning disputes. Union business agent Prickett testified that the usual procedure was for employees to attempt to work out the problem with the supervisor and then go to the Union. The ALJ found that the encounter with the laborers was not improper in that any other action would have allowed the laborers to move the doors, thus allegedly allowing a contract violation. He further found that the encounter was a chance occurrence and the reaction a spontaneous one which caused a minor delay and did not rise to a violation of the Act. R. 465–467.

The ALJ was correct in holding that there was no evidence to suggest that the two discharged employees were acting for personal benefit or for any reason other than enforcement of the contract. *NLRB v. Truck Drivers, Oil Drivers, Etc.*, 7 Cir.,

630 F.2d 505, 508, cert. denied 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225, is not in point as the evidence there showed that the employees were acting for their personal benefit and in a manner likely to embarrass the union. Here, the disruption was minor. The employees' actions in stating their grievances to the laborers were not unreasonable in view of the spontaneity of the encounter and the Company's past refusals to change its assignment practices in response to Union complaints.

The Company says that the ALJ erred in finding that only the events of September 25 should be considered and in refusing to consider the past relationship of the parties and the past misconduct of the employees. The ALJ held that Stark and Brookman were fired because they continued to complain about the assignment of carpenters' work to laborers.

Although the Company argues that Guggenheim was concerned about lack of production, insubordination, intimidation, and failure to follow orders in recommending the discharges, the record belies the claim. Protests by both the Union and the employees went unheeded. The next day after the incident among Stark, Brookman, and the laborers, Guggenheim asked Stark and Brookman if they were going to stop complaining. He was told that they would not stop complaining. Guggenheim testified that he was not committed to their discharges until he asked them one last time if they would continue. They responded, "laborers are not going to do carpenters work." At that, Guggenheim said, "that's it," and gave them their checks. Tr. 278. He further testified that the two would have continued working had the events of September 25 not occurred. Tr. 32. Cardone, the president of the Company, and the official who made the decision to fire, testified regarding the past work problems with Stark. He stated that he did not know Brookman prior to September 25, 1980. He said that the events of September 25 were the "straw that broke the camel's back." Tr. 9.

The ALJ carefully explained his reasons for finding that the statements of Cardone and Guggenheim that the discharges were for lack of production and insubordination lacked credibility. R. 470–472. He found that Cardone's story that Guggenheim told him that no jurisdictional dispute was involved made little sense and that Cardone's account of what was reported to him appeared to have been calculated to protect the Company. The ALJ found that specific conflicts between the two men's statements, inconsistencies within their statements, and sudden shifts in their testimony indicated that they were not testifying candidly. Id.

It is the policy of the Board not to overrule the ALJ's finding with respect to credibility unless the clear preponderance of all relevant evidence convinces it that the findings are incorrect. *Standard Dry Wall Products, Inc.*, 91 N.L.R.B. 544, enforced 188 F.2d 362. Here, substantial evidence supports the ALJ's credibility findings and his determination that the events of September 25 were the critical events leading to the discharge. The findings of the ALJ and the decision of the Board to accept those findings are supported by substantial evidence.

The Company claims that the ordered remedy of reinstatement with back pay is arbitrary and capricious even if there was an unfair labor practice because the ALJ acknowledged that the infraction was not a major one but ordered "the harshest remedy possible." Petitioner's Brief at 31.

The Board has wide discretion in its choice of remedies. *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 176, 94 S.Ct. 414, 421, 38 L.Ed.2d 388. Section 10(c) of the Act expressly empowers the Board to order "reinstatement to employees ... with back pay" where in the Board's judgment this remedy "will effectuate the policies of the Act." 29 U.S.C. § 160(c). The Board's discretion is not absolute and reinstatement should not be ordered if the policies of the Act are not furthered. *NLRB v. Apico Inns of California, Inc.*, 9 Cir., 512 F.2d 1171, 1175. In

that case the employee was engaged in a campaign of misconduct to undermine and displace his supervisor and had been warned repeatedly against misbehavior on the job. Here, although there was testimony of prior misconduct by Stark, the evidence supports the ALJ's determination that this was not the basis for the discharge. Brookman was not charged with serious misconduct. The two men had been complimented by Guggenheim for their work before the discharge. Tr. 71. There is nothing in their work histories so reprehensible as to deny them the "otherwise appropriate" remedy of reinstatement. See *NLRB v. Yazoo Valley Electric Power Ass'n.*, 5 Cir., 405 F.2d 479, 480.

The Company argues that the remedy constitutes a penalty as it "totally ignored the economic realities of the business world and the devastating effect the remedy ordered has on a small business such as Petitioner." As this court noted in addressing such an economic hardship argument in *M.S.P. Industries, Inc. v. NLRB*, 10 Cir., 568 F.2d 166, 179, "the finding of an unfair labor practice and discriminatory discharge is presumptive proof that some back pay is owed by the employer." The record does not support the Company's claim of ruinous financial hardship.

The Order of the Board is enforced.