982 F.2d 441
 142 L.R.R.M. (BNA) 2146, 124 Lab.Cas. P 10,497
 Jerry MIERA; Andy Trujillo; Albert Miranda; Chad Sullins;
Arnold Haynes, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
ABF Freight System, Inc., Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ABF FREIGHT SYSTEM, INC., Respondent.
 Nos. 91-9573, 92-9506.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 29, 1992.
 
 Paul J. Kennedy, Albuquerque, NM, for petitioners.
 Howard E. Perlstein, Supervisory Atty., John H. Fawley, Attorney, Jerry M. Hunter, General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., Washington, DC, for respondents.
 John V. Jansonius and Jill J. Weinberg of Haynes and Boone, L.L.P., Dallas, TX, for intervenor.
 Before McKAY, Chief Judge, SEYMOUR, and KELLY, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 These consolidated appeals come to the court on a petition for review in appeal No. 91-9573, filed by Jerry Miera, Andy Trujillo, Albert Miranda, Chad Sullins, and Arnold Haynes ("Petitioners"), challenging a decision against them by the National Labor Relations Board (the "Board") on unfair labor practice claims against their former employer, ABF Freight System, Inc. (ABF); and on an application for enforcement in appeal No. 92-9506, filed by the Board in connection with another part of that same decision, charging ABF with unfair labor practices against former employee Michael Manso.[1] The cases were consolidated because they arise from the same set of facts and because they both involve review of the Board's Decision and Order reported at 304 NLRB No. 75, 1991 WL 181854 (N.L.R.B.) (1991) ("D & O"). The facts underlying this appeal are detailed in that decision and will be repeated here only in part.
 
 
 2
 * The following facts are relevant to our disposition of these appeals. ABF operates a large, national, motor freight business, including a truck terminal in Albuquerque, New Mexico. The Albuquerque facility employs approximately one hundred dockworkers, who are represented by Teamsters Local 492. The majority of ABF's dockworkers are on the regular seniority list, whether employed full or part-time, and enjoy certain benefits as employees under a regional agreement between the union and a multi-employer collective bargaining unit in which ABF participates. In addition, ABF employs casual dockworkers, who originally had no standing as employees under the regional agreement. A 1988 supplement to the agreement altered the rights of ABF's casual dockworkers by creating a new category of workers, "preferential casual" dockworkers, who were given certain limited rights. Petitioners, along with Michael Manso, were employed as casual dockworkers at the Albuquerque facility when the supplement became effective.
 
 
 3
 ABF and the union disagreed as to the meaning of the contract provision creating the new category, and as to the impact of the provision on ABF's existing casual dockworkers. Petitioners, Manso, and others were discharged by ABF pursuant to the company's interpretation of the contract. After the union filed a grievance on behalf of the discharged dockworkers, both the first-step and second-step grievance panels deadlocked. Ongoing negotiations between the union and ABF, while settling the dispute as to some of the discharged workers, did not resolve the grievance as to Petitioners or Manso. During the negotiations, ABF refused to reinstate the discharged workers unless they signed waivers of their rights under the preferential casual contract provision.
 
 
 4
 Manso and one of the Petitioners, Andy Trujillo, filed an unfair labor practice charge against ABF on behalf of Manso and all of the Petitioners. A third-step grievance panel subsequently reached a decision requiring ABF to offer reinstatement to the discharged workers as "preferential casuals." ABF complied.
 
 
 5
 When ABF created its preferential casual list, it also implemented a verification policy for work calls that applied only to preferential casuals. Under the verification policy, a supervisor would ask another union employee to telephone a preferential casual to come to work. If the preferential casual did not answer the call, the union employee would sign a sheet verifying the lack of response. After a preferential casual failed twice to respond to such work calls, ABF could discharge him.
 
 
 6
 There was testimony that shortly after the discharged dockworkers were reinstated, three of ABF's supervisors individually warned Manso that the company was "gunning" for him. Manso was subsequently discharged for his second failure to respond to a work call, under the new verification policy. Manso filed a grievance. Evidence at the grievance hearing established that a supervisor would not allow the employee calling Manso to redial his number after the employee expressed concern that he had misdialed. Manso was reinstated without backpay.
 
 
 7
 Not long thereafter, Manso received a disciplinary warning letter after reporting to work four minutes late. The evidence shows that ABF did not have a tardiness policy at that time, but Manso was warned that he should expect "the worst," including discharge, for future tardinesses. ABF then implemented a tardiness policy applicable only to preferential casuals: two unexcused tardinesses would result in discharge. Manso subsequently reported almost one hour late to work. He provided an excuse for his tardiness; he said that his car had broken down on the freeway. ABF investigated his story and concluded that he was lying. ABF discharged Manso under its tardiness policy. Manso filed a grievance, and repeated his excuse at the first-step grievance hearing. Other evidence contradicted Manso's story and his discharge was upheld at the first-step level. Manso failed to pursue his grievance further, but he filed another unfair labor practice charge against ABF.
 
 II
 
 8
 These appeals arise out of the two unfair labor practice charges. After a hearing on the consolidated cases, an administrative law judge (ALJ) issued a decision that ABF had violated various provisions of the National Labor Relations Act, 29 U.S.C. §§ 141-187, 557 (the Act), in connection with its initial discharge and refusal to reinstate Manso and Petitioners, and in connection with its subsequent discharge of Manso for failure to respond to work calls. The ALJ found that Manso's third discharge, under ABF's tardiness policy, was a discharge for cause.
 
 
 9
 On review, the Board disagreed with the ALJ that the initial discharge of Manso and Petitioners was in violation of the Act, and disagreed that Manso's final discharge was for cause. The Board therefore dismissed Petitioners' charges, and ordered ABF to offer reinstatement to Manso and to award him backpay and interest.
 
 
 10
 We have jurisdiction over these appeals under 29 U.S.C. § 160(e), (f). We will grant enforcement of an NLRB order when the agency has correctly applied the law and its findings are supported by substantial evidence in the record as a whole. Colorado-Ute Elec. Ass'n, Inc. v. NLRB, 939 F.2d 1392, 1400 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2300, 119 L.Ed.2d 223 (1992). We review questions of law presented by this appeal de novo. See Facet Enters., Inc. v. NLRB, 907 F.2d 963, 969 (10th Cir.1990). The Board's factual findings are deemed conclusive if, considering the record as a whole, they are supported by substantial evidence. 29 U.S.C. § 160(e), (f). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Facet Enters., 907 F.2d at 969 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Employing these standards, we affirm the Board's decision and order.
 
 III
 
 11
 In appeal No. 91-9753, Petitioners raise two issues. They claim generally that the Board erred in dismissing their unfair labor practice charges against ABF, and they contend more specifically that the Board erroneously rejected the ALJ's credibility determinations in reaching its ruling. Essentially, they seek a return to the ALJ's ruling that ABF violated the Act in initially discharging them and in refusing to reinstate them.
 
 
 12
 The ALJ's ruling was based in part on his interpretation of the contract provision creating the preferential casual category. His decision implicitly found ABF's interpretation of the contract unreasonable, and consequently its reliance on that interpretation in discharging Petitioners unreasonable. The Board, on the other hand, found that ABF discharged Petitioners pursuant to a "nondiscriminatory, reasonable, and arguably correct interpretation of the agreement." D & O at *6.
 
 
 13
 Our standard of review of the agency's factual findings is not altered when the ALJ and the Board reach opposite conclusions; however, the ALJ's findings are part of the record and must be considered. Harberson v. NLRB, 810 F.2d 977, 983 (10th Cir.1987). After a careful review of the record on appeal, we conclude that the Board's finding of reasonableness, as well as its ultimate determination that ABF did not violate the Act in discharging and subsequently refusing to reinstate Petitioners, is supported by substantial evidence.
 
 
 14
 We disagree with Petitioners' argument that the Board rejected the ALJ's credibility determinations in reaching its result. The Board credited the ALJ's credibility determinations, see, e.g., D & O at *5, but differed as to the ultimate import of the evidence. The Board need not reject the ALJ's credibility determinations to conclude that other evidence outweighs or offsets that evidence, compelling a different result.[2]
 
 IV
 
 15
 In appeal No. 92-9506, the Board seeks enforcement of its order requiring ABF to pay back wages and interest and to offer reinstatement to Michael Manso following its finding that Manso's discharge was unlawfully motivated. Respondent ABF argues that 1) the Board's order violates section 10(c) of the Act because Manso was discharged for cause, 2) the Board disregarded evidence that Manso was discharged for cause, 3) no evidence supports the Board's inference that the managers who discharged Manso knew he had engaged in protected union activity, 4) the Board improperly relied on evidence about other, non-similar employees, 5) the record does not support the Board's finding of retaliatory animus against Manso, 6) the Board's award of backpay and reinstatement violates public policy, and 7) the Board's order improperly exceeded the scope of Manso's exceptions to the ALJ's decision.
 
 
 16
 ABF first argues the Board erred in finding that Manso's third discharge was not for cause. Section 10(c) of the Act, 29 U.S.C. § 160(c), prohibits the Board from requiring reinstatement of an individual discharged for cause. ABF points out that the first-step grievance panel found Manso was discharged for cause, and argues that this finding is "final and binding." Respondent's Brief at 21. ABF contends that the Board could therefore not redetermine this fact issue and that its authority under section 10(c) was limited to declaratory relief.
 
 
 17
 We do not view the Board's authority so narrowly. The Board need not defer to findings in a prior arbitration. See NLRB v. Gould, Inc., 638 F.2d 159, 165-66 (10th Cir.1980), cert. denied, 452 U.S. 930, 101 S.Ct. 3065, 69 L.Ed.2d 430 (1981). Deference to such an award is within the Board's "wide discretion," and our review is limited to determining whether the Board abused its discretion in choosing not to defer. Id. at 166. Following our review of the record on appeal, we conclude the Board did not abuse its discretion; as we determine below, ample evidence supports its independent finding that Manso's third discharge was not for cause. Accordingly, we also disagree that the Board's authority to fashion a remedy was limited to declaratory relief. See Interior Alterations, Inc. v. NLRB, 738 F.2d 373, 377 (10th Cir.1984) (Board has wide discretion in its choice of remedies and is empowered to order reinstatement and backpay).
 
 
 18
 In concluding that Manso had not been discharged for cause, the Board relied on evidence in the record that Manso was expressly discharged for tardiness, not for lying about his excuse for being late. The record contains testimony that, had Manso provided a legitimate excuse, he would not have been discharged under ABF's preferential casual tardiness policy. ABF argues that, but for Manso's lying about his excuse, he would not have been discharged; therefore, he was discharged for his dishonesty.
 
 
 19
 In "mixed-motive" cases such as this one, following a showing that antiunion animus contributed to an employer's decision to discharge the employee, the burden of proof shifts to the employer to show that the employee would have been discharged absent any protected union activity. See NLRB v. Transportation Management Corp., 462 U.S. 393, 395, 103 S.Ct. 2469, 2471, 76 L.Ed.2d 667 (1983); YMCA of the Pikes Peak Region, Inc. v. NLRB, 914 F.2d 1442, 1452 n. 10 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991). ABF advances several arguments in support of its contention that the record does not support a finding of retaliatory intent. However, our review of the record reveals abundant evidence of antiunion animus in ABF's conduct towards Manso.
 
 
 20
 When Manso returned to work at ABF following his first reinstatement, he was warned that the company was out to get him. During the grievance hearing on his second discharge, evidence showed that the work call verification policy was being used in a discriminatory fashion against Manso. The tardiness policy, under which Manso was discharged for the third time, was applied retroactively to Manso, as his first instance of tardiness occurred before the policy was instituted. We also note that, although the Board did not rely on this evidence, D & O at * 7 n. 11 & *9, antiunion animus was demonstrated in ABF's implementation of policies exclusive to preferential casuals.
 
 
 21
 ABF asserts there was no proof that the managers who discharged Manso--Johnson, Hatfield and Fultz--knew about his protected union activity, and contends such knowledge cannot be imputed to them. However, the record contains evidence that Johnson was served with a copy of Manso's unfair labor practice charge against ABF, and that Hatfield knew generally which employees filed unfair labor practice charges against the company. Hatfield and Johnson received copies of the disciplinary notices sent to employees by Fultz. Moreover, ABF did not offer testimony that Hatfield, Johnson and Fultz lacked such knowledge when they decided to discharge Manso. On this record, the Board could reasonably infer that some or all of these individuals had knowledge of Manso's protected union activity.
 
 
 22
 We conclude that, under the mixed-motive analysis applicable here, see YMCA of the Pikes Peak Region, 914 F.2d at 1452 n. 10, substantial evidence supports the Board's determination that the General Counsel for the Board proved a prima facie case of unlawful discriminatory discharge, and that ABF did not meet its burden of showing that Manso would have been discharged in the absence of his protected union activity. Accordingly, the Board's finding that Manso was not discharged for cause, although contrary to that reached by the ALJ, is supported by substantial evidence in the record. See Harberson, 810 F.2d at 983.
 
 
 23
 In light of our conclusion that ample evidence of antiunion animus exists in the record, we need not consider ABF's contentions that the ALJ allowed introduction of, and the Board relied on, allegedly irrelevant evidence regarding other ABF employees. If introduction of this evidence was erroneous, as ABF argues, it was harmless in light of the evidence discussed above which, by itself, supports the Board's decision.
 
 
 24
 ABF further argues that the Board's award of reinstatement and backpay to Manso violates public policy because giving these remedies to an employee who lied to his employer and to the ALJ does not effectuate the policies of the Act. ABF relies on cases holding that reinstatement is improper where an employee engaged in serious misconduct. See NLRB v. Breitling, 378 F.2d 663, 664 (10th Cir.1967); see also NLRB v. Magnusen, 523 F.2d 643, 646 (9th Cir.1975) (employee theft precludes reinstatement); NLRB v. Commonwealth Foods, Inc., 506 F.2d 1065, 1068 (4th Cir.1974) (same).
 
 
 25
 The Board has wide discretion in assessing whether, in its judgment, a particular remedy will effectuate the policies of the Act. See Interior Alterations, 738 F.2d at 377. We do not believe the Board abused its considerable discretion in deciding that Manso's conduct in this case did not rise to the level of misconduct requiring that reinstatement should be denied. See id. at 378. We view Precision Window Mfg. v. NLRB, 963 F.2d 1105, 1109-10 (8th Cir.1992), as distinguishable. There the employee lied in the first instance during the administrative hearing by misrepresenting facts that were highly relevant to determining whether he was fired for his union activity. Here, to the contrary, Manso's original misrepresentation was made to his employer in an attempt to avoid being fired under a policy the application of which the Board found to be the result of antiunion animus.
 
 
 26
 Finally, we reject ABF's complaints that 1) the ALJ and the Board "overlooked" evidence of non-discriminatory treatment of preferential casual, and 2) the Board's decision exceeds the scope of Manso's exceptions to the ALJ's decision, as lacking in merit.
 
 
 27
 The petition for review in appeal No. 91-9573 is DENIED. The petition for enforcement in appeal No. 92-9506 is GRANTED.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument
 
 
 [2]
 Because we affirm the Board's dismissal of Petitioners' claims against ABF, we need not address ABF's contention that the Board should have deferred to the findings of the National Grievance Committee supporting its arbitration award at the third-step level