**C.C. EASTERN, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 94–1115.

United States Court of Appeals, District of Columbia Circuit.

Argued March 21, 1995.

Decided August 1, 1995.

Jeffrey L. Braff, Philadelphia, PA, argued the cause and filed the briefs, for petitioner.

Deborah E. Shrager, Atty., N.L.R.B., Chicago, IL, argued the cause for respondent. With her on the brief, were Linda R. Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel and Linda Dreeben, Supervisory Atty., N.L.R.B., Washington, DC.

Before SILBERMAN, BUCKLEY and GINSBURG, Circuit Judges.

GINSBURG, Circuit Judge:

C.C. Eastern, Inc., a cartage company, petitions for review of (1) an order of the National Labor Relations Board denying its claim that certain drivers are independent contractors and not employees covered by the National Labor Relations Act, and of (2) a subsequent Board order holding that the Company violated §§ 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1), (5), when it refused to bargain with the union that the drivers elected as their bargaining representative. We agree with the Company that the drivers are independent contractors and therefore grant its petition, deny the Board's cross-application for enforcement, and vacate both orders.

## I. Background

Central Transport, Inc. carries freight between North Brunswick, New Jersey and distant cities. Its affiliate, C.C. Eastern, Inc., provides local pick-up and delivery service from its terminal in North Brunswick. Fourteen drivers perform the local pick-ups and deliveries.

In December 1991, Local 701 of the International Brotherhood of Teamsters filed a petition with the NLRB seeking to represent "[a]ll drivers employed by [Central Transport] at its North Brunswick New Jersey" terminal. The NLRB rejected that petition because Central was not the Employer at that location, and the Union subsequently filed a new representation petition identifying Eastern as the Employer. Eastern challenged the new petition upon the ground that the drivers are independent contractors and hence not covered by the Act, but the Regional Director of the NLRB rejected that claim and ordered that a representation election go forward. 309 N.L.R.B. 1071 (1992). The Board affirmed that decision, 309 N.L.R.B. 1070 (1992), and the drivers at the North Brunswick terminal elected the Union to represent them in collective bargaining. In order to preserve for judicial review its claim that the drivers are not "employees" within the coverage of the Act, the Company refused to bargain with the Union. The Board then ruled that the Company had thereby violated §§ 8(a)(1) and (5) of the Act and ordered it to bargain, 313 N.L.R.B. 632, 1994 WL 43674 (1994), and the Company now petitions this court for review.

## II. Analysis

The Company's principal contention is that the 14 drivers are not employees but rather independent contractors. The Company also argues in the alternative that the Board improperly denied its request to present certain evidence bearing upon the proper characterization of the drivers' status. Because we agree with the Company that the drivers are not employees, we do not reach the evidentiary issue.

### A. Relevant Principles of Law

The jurisdiction of the NLRB extends only to the relationship between an employer and its "employees"; it does not encompass the relationship between a company and its "independent contractors." *North Am. Van Lines, Inc. v. NLRB*, 869 F.2d 596,

597 (D.C.Cir.1989) (hereinafter "*NAVL*"); *see also* 29 U.S.C. § 152(3). Therefore, the characterization of a group of workers as "employees" or as "independent contractors" is dispositive of the question whether they may elect a bargaining representative through the processes of the NLRB.

■■■ Although the Board must decide in the first instance whether individuals claiming the protection of the NLRA are employees or independent contractors, the Act requires the Board to resolve that question by reference to the common law of agency. *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 256, 88 S.Ct. 988, 989–90, 19 L.Ed.2d 1083 (1968). The application of the law of agency to established and undisputed findings of fact "involve[s] no special administrative expertise that a court does not possess," *id.* at 260, 88 S.Ct. at 991–92; we therefore "need not accord the Board's decision that special credence which we normally show merely because it represents the agency's considered judgment." *Local 777, Democratic Union Organizing Committee, Seafarers Int'l Union of North Am. v. NLRB*, 603 F.2d 862, 872 (D.C.Cir.1979) (hereinafter "*Seafarers*"). Even that does not mean, however, that we review the Board's determination *de novo:* We will still uphold the Board if it can be said to have "made a choice between two fairly conflicting views." *NAVL*, 869 F.2d at 599.

■■■ Whether a worker is an independent contractor or an employee is a function of the amount of control that the company has over the way in which the worker performs his job. *Seafarers*, 603 F.2d at 872–74. As the Board itself has explained:

> [A]n employer-employee relationship exists when the employer reserves not only the right to control the result achieved, but also the means to be used in attaining the result. On the other hand, when the employer has reserved only the right to control the ends to be achieved, an independent contractor relationship exists.

*Twin City Freight, Inc., et al.*, 221 N.L.R.B. 1219, 1220, 1975 WL 6567 (1975). Although this "right-to-control" test requires an evaluation of all the circumstances surrounding the relationship between the company and

the worker, "the extent of the actual *supervision* exercised by a putative employer over 'the means and manner' of the workers' performance is the most important element to be considered." *Seafarers*, 603 F.2d at 873 (emphasis in original). It is important, however, to distinguish such company supervision from company efforts merely "to monitor, evaluate, and improve the results or ends of the worker's performance." *NAVL*, 869 F.2d at 599. Supervision of the "means and manner" of the worker's performance renders him an employee, while steps taken to "monitor, evaluate, and improve the results" of his work, without supervision over the means by and manner in which he does his work, indicates that the worker is an independent contractor. *See City Cab of Orlando, Inc. v. N.L.R.B.*, 628 F.2d 261, 264 (D.C.Cir.1980).

### B. *The Evidence*

■■■ In this case, the Company's actual supervision over the means and manner of the drivers' performance was at most minimal. As reflected in the report of the Regional Director, the Company does not·(1) set specific work hours for the drivers; (2) exercise any control over the drivers' dress or appearance; or (3) have a conventional disciplinary system (as opposed to the Quality Contractor Award program, of which more below). 309 N.L.R.B. at 1071. In addition, it is undisputed that each driver uses his own tractor to haul the Company's freight and, while the tractor must be suitable for the task at hand (*i.e.*, for the ends of the job), the Company does not require the tractors to be of any specific type, size, or color. The Company also leaves it to the drivers to decide when and whether to perform maintenance and repair work on the tractors, the cost of which the drivers bear.

The record also reflects various other aspects of the relationship between the Company and the drivers indicative of their status as independent contractors: (1) the drivers own the tools of their trade (*i.e.*, the tractors, valued at $20,000–$40,000); (2) the Company does not provide the drivers with any of the benefits commonly offered to employees, such as health or life insurance, nor does it

even withhold income tax from their pay; (3) the drivers are paid by the job rather than by the hour; (4) the contract between the Company and each individual driver characterizes the driver as an independent contractor; and (5) the drivers retain the rights, as independent entrepreneurs, to hire their own employees to drive the tractors for them, to lease out their tractors for use by others, or to use their tractors during non-business hours to haul for anybody other than a direct competitor of the Company. Although less important to our determination of the drivers' status than is the absence of evidence that the Company supervises the means and manner of their work, these factors do have some probative weight and each points decidedly in the direction of the drivers being independent contractors. *See NAVL,* 869 F.2d at 599–600.

The Board does not dispute the foregoing facts. Instead it offers other evidence meant to show that the Company exerts substantial control over the means by and manner in which the drivers perform their work, and attempts to distinguish those cases in which similarly situated workers were held to be independent contractors. Neither of these efforts succeeds.

First, the Board claims that the Company substantially controls the order in which the drivers make their deliveries and in that way controls the means by and manner in which they do their jobs. Although the Company does assign each driver to a specific delivery area each day, we also see in the record that the drivers retain a substantial amount of flexibility in deciding how best to go about accomplishing their assigned task. The Company's dock contractor simply places the freight into trailers in the order in which it comes into the terminal overnight. *Id.* at 1072. While some drivers deliver the freight in the order in which it was loaded (*i.e.,* working from the back of the trailer to the front) others reload the freight and deliver it in the order they find most efficient. *Id.* at 1070. Thus, it is really the driver, not the Company, who ultimately determines the order in which he will make deliveries.

Moreover, the Board's focus upon the default role of the dock contractor in ordering deliveries obscures other evidence that the drivers exercise control over their pick-ups and deliveries: The drivers decide (1) what roads to take in making their deliveries and pick-ups (which is important not only because it affects the wear-and-tear on their tractors but also because they are responsible for paying for their own tolls and fuel), (2) when to take a break, and (3) when to start and stop work. The Board correctly notes that these aspects of driver autonomy, as well as the ability to re-order pick-ups and deliveries, are constrained somewhat by customer demands for service at specific times. But the Board has in the recent past held that where a company's control over an aspect of the workers' performance is motivated by a concern for customer service, that control does not suggest an employment relationship because it is "addressed to the ends to be achieved ... rather than the means to achieve that result." *See Central Transport, Inc. et al.,* 299 N.L.R.B. 5, 13, 1990 WL 122535 (1990). Because the Board offers no explanation for departing from its own precedent, we cannot countenance its effort now to rely upon the customer service constraint as evidence that the drivers are employees. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851–52 (D.C.Cir.1970).

The Board also points to Eastern's "Quality Contractor Award" program as evidence of the Company's control over the means by and manner in which the drivers perform their jobs. Under this program, which the Board calls variously a bonus system and a disciplinary system, *i.e.,* a carrot and a stick, the Company first determines the lump-sum amount that a driver will receive if he successfully hauls loads for a full calendar year. Over the course of the year that sum may be reduced by specified amounts for various reasons—lack of availability to drive, an accident, or inadequate administrative work, such as errors in filling out necessary paperwork. 309 N.L.R.B. at 1070–72. Although the Board recognizes that the Quality Contractor Award "might have been indicative of entrepreneurial incentive," it concludes that it amounts to "a de facto if not de jure disciplinary tool," and therefore considers it

to be evidence that the drivers are employees. *Id.* at 1072.

The Board's analysis confuses an effort to "monitor, evaluate, and improve the results or ends of the worker's performance," *NAVL*, 869 F.2d at 599, with an effort to control the means by and manner in which they do their work. As we explained in *NAVL*, an incentive system designed "to ensure that the drivers' overall performance meets the company's standards" is a form of monitoring, evaluating, and improving the results of worker performance and is fully consistent with an independent contractor relationship. *Id.* at 603. The Board tries to distinguish *NAVL* on the ground that the drivers in that case had greater autonomy to turn down loads; the Board's point is that the incentive system there was designed "to motivate drivers to accept assignments," 309 N.L.R.B. at 1071 n. 2, which is a goal directed toward results rather than the means by which the drivers perform their jobs. But that was not the only goal of the incentive system in *NAVL*. Although the Board here simply ignores them, the other goals were to "reward[ ] drivers who complete their runs on time, have low rates of customer dissatisfaction, [and] do not accumulate excessive debt"—goals that we held also pertain to each driver's overall performance and thus to the ends of the job rather than the means by which it is done. 869 F.2d at 603. We do not see how those goals differ in any meaningful way from the goals of Eastern's Quality Contractor Award program (*i.e.*, steady availability for work, a low accident rate, and accurate performance of necessary paperwork), and the Board offers no distinction. Because the goals of Eastern's incentive program, like those of the incentive system in *NAVL*, pertain to the drivers' overall performance of their jobs, the Board erred in relying upon that program as evidence that the drivers are employees.

Finally, the Board attempts to downplay the significance of the entrepreneurial opportunities that Eastern affords the drivers. As mentioned above, the driver has the contractual right to hire and the sole responsibility for supervising his own employees to help him in the performance of his work. Whenever a driver is not hauling for the Company (generally on weekends and evenings) he may lease his tractor for use by another or use his tractor himself to haul for anyone other than a direct competitor of the Company's. Although the drivers' retention of such substantial entrepreneurial opportunities tends to support their being independent contractors, *see NAVL*, 869 F.2d at 599–600, the Board notes that the drivers generally have not in fact availed themselves of those opportunities, the significance of which it therefore discounts to zero. 309 N.L.R.B. at 1072.

The Board's premise is correct; if a company offers its workers entrepreneurial opportunities that they cannot realistically take, then that does not add any weight to the Company's claim that the workers are independent contractors. *See City Cab of Orlando, Inc.*, 628 F.2d at 265. The Board misapplies that principle in this case, however, by attempting to use the drivers' failure to avail themselves of real entrepreneurial opportunities as affirmative evidence against the Company's claim that they are independent contractors. Although we are able to find in the present record only one instance of a driver hiring someone else to haul Company freight using his tractor, that example shows that there is no unwritten rule or invisible barrier preventing other drivers from likewise exercising their contractual right. *See also Central Transport*, 299 N.L.R.B. at 7–8 (drivers operating under same contract commonly hired assistants). Moreover, as the drivers work only 40 to 50 hours per week for the Company, it seems that their schedules do not preclude them from taking on additional hauling business during their off-hours.

In *Seafarers* we held that to establish whether a worker is an employee, the "determining element" is "the right and not the exercise of control" over the means by and manner in which a worker performs his job. 603 F.2d at 874. Likewise it is the worker's retention of the right to engage in entrepreneurial activity rather than his regular exercise of that right that is most relevant for the purpose of determining whether he is an independent contractor. So considered, the evidence in the record concerning entrepreneurial opportunities actually tilts in

favor of the Company's claim that the drivers are independent contractors.

As this rehearsal of the record reveals, there is a great deal of evidence to support the Company's claim that the drivers are independent contractors, while the primary evidence upon which the Board relies to reach the contrary conclusion does not hold up under scrutiny. Indeed, the difficulty with the Board's analysis is epitomized in its effort to distinguish its own earlier decision in *Central Transport*. In that case, which involved Eastern's corporate affiliate—indeed, the company for which the Union originally thought the drivers at issue here were working—the Board found that the drivers were independent contractors rather than employees. As the Board conceded at the argument in this case, the drivers employed respectively by Central and by Eastern operated under the very same contract, which sets out the Company-worker relationship in great detail. The Board accounts for the apparent inconsistency between the two decisions upon the ground that the Central drivers actually engaged in more entrepreneurial activity and were not subject to the "discipline" of the Quality Contractor Award program. 309 N.L.R.B. at 1070–71. As explained above, however, neither of those factors supports the conclusion that the drivers, who would otherwise presumably be independent contractors by the Board's own reasoning, are instead employees. The Board's attempt to distinguish *Central Transport* thus having failed, the result in that case must also obtain here.

### III. CONCLUSION

For the foregoing reasons, we conclude that the Eastern drivers are independent contractors; they are not "employees" within the meaning of the Act and therefore are not within the jurisdiction of the Board. Hence we grant the Company's petition, deny the Board's cross-application for enforcement, and vacate in their entirety the orders under review.

*So ordered.*