CORPORATE EXPRESS DELIVERY SYSTEMS, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

International Brotherhood of Teamsters, Local Union No. 886, Intervenor.

No. 01–1058.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 2002.

Decided June 11, 2002.

Terry L. Potter argued the cause and filed the briefs for petitioner.

Richard A. Cohen, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Fred L. Cornnell, Supervisory Attorney.

James B. Coppess argued the cause for intervenor. With him on the brief was Michael C. Murphy.

Before: GINSBURG, Chief Judge, and EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

An express delivery company petitions for review, and the National Labor Relations Board cross-applies for enforcement, of a Board order holding that (1) drivers who delivered packages for the Company using their own vehicles (owner-operators) were employees rather than independent contractors, and (2) the Company committed unfair labor practices against owner-

operators who were engaged in union organizing activities. *Corp. Express Delivery Sys.*, 332 N.L.R.B. No. 144, at 10–11, 2000 WL 1899156 (Dec. 19, 2000). Because we agree with the Board that the owner-operators are employees, and there is substantial evidence that the Company engaged in the practices alleged, we deny the Company's petition for review and grant the Board's application for enforcement.

## I. Background

The Board found the following facts, some of which the Company contests. Corporate Express Delivery Systems engaged two types of drivers to deliver packages in Oklahoma City: those who drove company vehicles and those who operated their own vehicles. In February, 1999 several owner-operators held a meeting to discuss forming a union. Soon thereafter two company managers told certain owner-operators the Company would close its Oklahoma City branch rather than deal with a union. A third manager then fired three of the union organizers. When the owner-operators held a second meeting, this manager drove twice around the meeting hall in an apparent effort to learn who was attending.

The General Counsel of the Board charged Corporate Express with violating § 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), by threatening and firing employees for engaging in union activity and by monitoring such activity. The Company argued principally that its owner-operators were independent contractors and were therefore not protected by the Act. An Administrative Law Judge ruled that the owner-operators were employees and that the Company had committed the charged unfair labor practices. The Board adopted the order of the ALJ, and Corporate Express petitioned this court for review.

## II. Analysis

The NLRA prohibits an employer from interfering with its employees' efforts to organize a union, but the Act offers no such protection to "independent contractors," 29 U.S.C. § 152(3); *see North Am. Van Lines, Inc. v. NLRB*, 869 F.2d 596, 597 (D.C.Cir.1989) (*NAVL*). Where, as here, the Board distinguishes an employee from an independent contractor, this court neither reviews its decision de novo nor affords it great deference. Drawing the distinction requires an exercise of judgment about both facts and law, but it "involve[s] no special administrative expertise that a court does not possess." *C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855, 858 (D.C.Cir.1995). Accordingly, we take a middle course and "uphold the Board if it can be said to have made a choice between two fairly conflicting views." *Id.*; *see also NAVL*, 869 F.2d at 599.

In past cases we have treated "the amount of control that the company has over the way in which the worker performs his job" as the most important among several elements useful in distinguishing an employee from an independent contractor. *C.C. Eastern*, 60 F.3d at 858; *see also NAVL*, 869 F.2d at 599; *Local 777, Democratic Union Org. Comm., Seafarers Int'l Union v. N.L.R.B.*, 603 F.2d 862, 873 (D.C.Cir.1978). Thus, we held in *C.C. Eastern* that owners of tractors used to haul a cartage company's trailers were independent contractors primarily because the company did not control the "means and manner" of their work; the company did not concern itself with the owner-operators' hours, attire, routes, break times, type of vehicle, or vehicle maintenance. 60 F.3d at 858–59.

Although the Company argues that this case is just like *C.C. Eastern*, we think the means and manner test might well yield the opposite result. In the earlier case we

emphasized the drivers' freedom to "reload the freight and deliver it in the order they find most efficient" and concluded that "it is really the driver, not the Company, who ultimately determines the order in which he will make deliveries." *Id.* at 859. In this case, by contrast, the owner-operators "could not deviate from the order of stops set out on the route sheet." *Corp. Express*, 332 N.L.R.B. No. 144, at 4. Corporate Express also required the owner-operators to carry pagers so they could be reached at all times, and to call in frequently for scheduling changes and updates. In addition, Corporate Express—unlike C.C. Eastern—imposed a dress code upon the drivers: "Owner operators were required to wear navy pants and company shirts that were either navy or white or striped." *Id.* On the other hand, the owner-operators serving Corporate Express were free to choose their routes, break times, and the type of vehicle they drove, and were responsible for the maintenance of their vehicle. Under the means and manner test, therefore, the Board may well "have made a choice between two fairly conflicting views" when it held that the owner-operators were employees.*

■ Ultimately, however, we need not answer that question because we uphold as reasonable the Board's decision, at the urging of the General Counsel, to focus not upon the employer's control of the means and manner of the work but instead upon whether the putative independent contractors have a "significant entrepreneurial opportunity for gain or loss." *Id.* at 6. We agree with the Board's suggestion that the latter factor better captures the distinction between an employee and an independent contractor. For example, as the Board points out, "the full-time cook is regarded as a servant [rather than as an independent contractor] although it is understood that the employer will exercise no control over the cooking." RESTATEMENT (SECOND) OF AGENCY § 202(1) cmt. d (1957). Similarly, a corporate executive is an employee despite enjoying substantial control over the manner in which he does his job. Conversely, a lawn-care provider who periodically services each of several sites is an independent contractor regardless how closely his clients supervise and control his work. The full-time cook and the executive are employees and the lawn-care provider is an independent contractor not because of the degree of supervision under which each labors but because of the degree to which each functions as an entrepreneur — that is, takes economic risk and has the corresponding opportunity to profit from working smarter, not just harder.

■ A shift of emphasis to entrepreneurialism leads inexorably to the conclusion that the Board properly deemed the owner-operators in this case employees. Typically an entrepreneur not only supplies his own equipment or tools; he may also hire subordinates and work for more than one party. The Board found, however, that the owner-operators here were not permitted to employ others to do the Company's work, 332 N.L.R.B. No. 144, at 4 ("Owner/operators could not hire someone to drive their route"), or to use their own vehicles for other jobs, *id.* at 6 ("[O]wner-operators may *not* use their vehicles to deliver goods for anyone other than Respondent") (emphasis in original). As a result, the owner-operators lacked all en-

---

* The factors to which we have previously looked other than control of the means and manner of work, *see C.C. Eastern*, 60 F.3d at 858–59, are also in conflict. The owner-operators owned their own vehicles, received no life or health insurance from the Company, and were described in their contracts as "independent contractors." At the same time, the drivers had no real entrepreneurial opportunities and were paid by the day, not by the project.

trepreneurial opportunity and consequently functioned as employees rather than as independent contractors.

Corporate Express contends that the Board's decision is inconsistent with that of its Director for Region Six, who found in another case that "owner-operators working [for this Company] under a similar contract were independent contractors." *See Corp. Express Delivery Sys.,* Case No.6–RC–11788 (Apr. 27, 2000). But the contract in the Region Six case was apparently dissimilar in a key respect: As the Company itself acknowledges, the Region Six decision "emphasized the owner-operators['] control over their work because of their ability to set their own delivery schedule." As discussed above, that factor cuts the opposite way in this case. In any event, the decision of a Regional Director does not bind the Board.

 Finally, Corporate Express maintains that even if the owner-operators were employees, it did not engage in any unfair labor practices. This claim simply cannot be squared with the record evidence in light of the credibility findings made by the ALJ. The Company's main argument is that its area manager, William Kennedy, could not have fired owner-operators due to their participation in union organizing activities because he was unaware of that participation when he fired them. The ALJ, however, expressly did not credit Kennedy's testimony to the extent it conflicted with other, credited evidence; and two people whom the ALJ deemed credible gave testimony that contradicted Kennedy's claim. First, union organizer Eddie Landers testified that he had faxed Kennedy a list of the organizers a week before Kennedy terminated two owner-operators whose names appeared at the top of that list. *Corp. Express,* 332 N.L.R.B. No. 144, at 10. Second, the ALJ found that "Kennedy told [owner-operator] Dunn that his name had come up," thereby revealing that Kennedy and others in the Company "had discussed employee support for the Union" before the terminations. *Id.* The Company's other arguments regarding the unfair labor practice charges similarly ignore the record evidence upon which the ALJ relied. We therefore uphold the Board's ruling that Corporate Express committed unfair labor practices by monitoring, threatening, and firing employees for their efforts to organize a union.

### III. Conclusion

For the foregoing reasons, the Company's petition for review is denied and the Board's cross-application for enforcement is granted.

*So ordered.*