FILED
United States Court of Appeals
Tenth Circuit

December 22, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TEAMSTERS LOCAL UNION NO.
523, affiliated with the International
Brotherhood of Teamsters,

      Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD,

      Respondent,

_____

KIRK RAMMAGE,

      Intervenor.

Nos. 08-9568, 08-9577

---

**PETITION FOR REVIEW AND CROSS-APPLICATION FOR
ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR
RELATIONS BOARD
(Nos. 17- CA- 23404 & 17- CB- 6146)**

---

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma,
appearing for Petitioner.

David A. Fleischer, Senior Attorney (Robert J. Englehart, Supervisory Attorney,
Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General
Counsel; John H. Ferguson, Associate General Counsel, and Linda Dreeben,
Deputy Associate General Counsel, with him on the brief), National Labor
Relations Board, Washington, D.C., appearing for Respondent.

John C. Scully, National Right to Work Legal Defense Foundation, Inc., Springfield, Virginia, appearing for Intervenor.

---

Before **TACHA**, **HOLLOWAY**, and **KELLY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

This appeal arises from an unfair labor practice dispute initiated by Kirk Rammage against the Teamsters Local Union No. 523 ("the Union") and Mr. Rammage's employer, Interstate Brands ("the Employer"). After a hearing, the National Labor Relations Board ("NLRB"), acting through its only two members, determined that both the Employer and the Union committed unfair labor practices in violation of 29 U.S.C. § 158. The Union brought this appeal[1] and the NLRB cross-appealed for enforcement of its order. This case poses two questions: (1) whether the NLRB has statutory authority to act with only two members, both of whom were part of a three-member group to which the NLRB delegated all of its authority; and (2) if the NLRB was authorized to act in this case, whether it erred in concluding that the Union committed an unfair labor practice when it insisted that Mr. Rammage lose his seniority for route bidding purposes because of his prior lack of union participation. We have jurisdiction under 29 U.S.C. § 160(e) and (f) and conclude that the NLRB has the authority to

---

[1]The Employer did not appeal the NLRB's order.

act under the present circumstances. Furthermore, we AFFIRM the decision of the NLRB and enter judgment enforcing its order in full.

## I. The NLRB's Authority to Act with Two Members

A.      Standard of Review

Before we can reach the merits of the unfair labor practice dispute, we must first determine whether 29 U.S.C. § 153(b) authorizes the NLRB to act with only two members under the present circumstances. We apply the familiar *Chevron* rule of deference to an agency's interpretation of its own statutory authority. *See Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228, 1250 (10th Cir. 2004) ("The FTC's conclusion that [statutory] language authorized it to enact the national do-not-call registry is entitled to deference under the familiar test outlined in *Chevron*."); *see also Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 381 (1988) (Scalia, J., concurring) ("[I]t is settled law that the [*Chevron*] rule of deference applies even to an agency's interpretation of its own statutory authority or jurisdiction."); *CFTC v. Schor*, 478 U.S. 833, 844 (1986) (citing *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984) for the proposition that "considerable weight must be accorded the CFTC's position" regarding its statutory authority to decide state law counterclaims in reparations proceedings). Under *Chevron*, we begin by examining the statute's plain language, giving words their ordinary and natural meaning, to determine if "Congress has directly spoken to the precise question at issue." *Rosillo-Puga v.*

*Holder*, 580 F.3d 1147, 1153 (10th Cir. 2009) (quotations omitted). "If congressional intent is clear from the statutory language, the inquiry is over, and both the court and the agency must give effect to the unambiguously expressed intent of Congress." *Id.* (quotations and internal citations omitted). If, however, the statutory language is silent or ambiguous regarding the precise question at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (quotations and internal citations omitted). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006).

B.     Analysis

The National Labor Relations Act ("NLRA") provides, in relevant part:

> The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise . . . . A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof.

29 U.S.C. § 153(b).

In December 2007, the NLRB was comprised of four members: Liebman, Schaumber, Kirsanow, and Walsh. On December 28, 2007, in anticipation of the Board's potential paralysis because of the approaching expiration of Kirsanow's and Walsh's terms, the four members delegated all of the Board's authority to

Liebman, Schaumber, and Kirsanow pursuant to the first sentence of § 153(b).

On December 31, 2007, Kirsanow's and Walsh's terms expired. Their departures

left only two members on the Board, Liebman and Schaumber, both of whom

were part of the three-member group to which the Board delegated all of its

authority. The Board has continued to act with only these two members since that

time.

The NLRB's construction of § 153(b) and its belief that it is authorized to

act under the present circumstances was derived, in part, from a Memorandum

Opinion issued by the Office of Legal Counsel of the U.S. Department of Justice.

In that opinion, the Office of Legal Counsel concluded that "[t]he provision for a

two-member quorum . . . is an express exception to the requirement that a quorum

of the Board shall be three members." Quorum Requirements, 2003 WL

24166831 (Mar. 4, 2003).

We are mindful that we are now the sixth circuit court to examine the

NLRB's statutory authority to act with two members under the present

circumstances.[2]  The First, Second, Fourth and Seventh Circuits have all upheld

the NLRB's construction of § 153(b) which authorizes the agency to act with only

two members if both members were part of a three-member group to which the

Board validly delegated all of its authority. *See Northeastern Land Servs., Ltd. v.*

---

[2]We also recognize that the Supreme Court has granted certiorari on this precise issue. *New Process Steel, L.P. v. NLRB*, 564 F.3d 840 (7th Cir. 2009), *cert granted*, 130 S. Ct. 488 (2009).

*NLRB*, 560 F.3d 36 (1st Cir. 2009); *Snell Island SNF LLC v. NLRB*, 568 F.3d 410 (2d Cir. 2009); *Narricot Indus., L.P. v. NLRB*, – F.3d –, 2009 WL 4016113 (4th Cir. 2009); *New Process Steel, L.P. v. NLRB*, 564 F.3d 840 (7th Cir. 2009). Although these courts have not followed identical analytical paths, the First, Fourth, and Seventh Circuits all based their decisions on the plain language of § 153(b). *See Northeastern Land Servs.*, 560 F.3d at 41 ("The Board's delegation of its institutional power . . . was lawful under the plain text of [§ 153(b)]."); *Narricot Indus.*, 2009 WL 4016113, at *3 ("Under the plain and unambiguous text of §3(b) . . . the designated three-member group was empowered to act with a two-member quorum."); *New Process Steel*, 564 F.3d at 846 ("The plain meaning of [§ 153(b)] thus supports the NLRB's delegation procedure.").

On the other hand, the District of Columbia Circuit has concluded that the NLRB does not have the authority to act with only two members under the present circumstances. *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469 (D.C. Cir. 2009). Significantly, the D.C. Circuit also based its decision primarily on the plain language of § 153(b), focusing on the phrase "at all times" in the middle of § 153(b)'s three-member quorum provision. *See id.* at 473 ("The quorum provision clearly requires that a quorum of the Board is, 'at all times,' three members." (quoting 29 U.S.C. § 153(b)).

We are hard-pressed in the wake of this split of opinion in our respected sister circuits to find that the statutory language is clear on its face. Indeed, this

very split "is evidence of [the statute's] ambiguity." *In re So. Star Foods, Inc.*, 144 F.3d 712, 715 (10th Cir. 1998). Accordingly, we proceed to *Chevron*'s second step, under which we must uphold the NLRB's interpretation of § 153(b) if that interpretation is permissible. Although § 153(b) states that "three members of the Board shall, at all times, constitute a quorum of the Board," that clause is immediately followed in the same sentence by the words, "except that two members shall constitute a quorum of any group designated pursuant to [§ 153(b)'s] first sentence. . . ." § 153(b). We find that the NLRB's construction of § 153(b), which reads the phrase "except that" as modifying the three member quorum provision, and which is consistent with the First, Fourth, and Seventh Circuits' constructions, is permissible. Therefore, we uphold the NLRB's authority, under § 153(b), to act with only two members, both of whom were part of a three-member group to which the Board validly delegated all of its authority.

## II. The Unfair Labor Practice Dispute

A.    Factual Background

Having determined that the NLRB has the authority to act with only two members under the present circumstances, we now turn to the merits of the unfair labor practice dispute. The Employer makes and distributes bakery products under several brand names including Dolly Madison, Hostess, and Wonder Bread. Historically, the Employer distributed its Dolly Madison products separately from its Hostess and Wonder Bread products. This meant that some sales

representatives exclusively sold and delivered Dolly Madison products while other sales representatives sold and delivered only Hostess and Wonder Bread products. This bifurcated distribution system also produced bifurcated union representation, with the Union representing both the Dolly Madison sales representatives and the Hostess/Wonder Bread representatives in separate bargaining units under separate collective bargaining agreements.

In late 2005, the Employer consolidated its distribution systems so that all of its sales representatives would sell and deliver products under all of its brand names. Pursuant to this consolidation plan, the Employer and the Union agreed that the separate bargaining units would also be consolidated so that the Union could represent all the Employer's sales representatives as one unit under one agreement. The Employer and the Union further agreed that: (1) the Hostess/Wonder Bread contract would govern the future relationship between the Union and the Employer; (2) the Dolly Madison contract would be allowed to expire; (3) all employees covered by the Dolly Madison contract would be dovetailed according to unit seniority with the employees covered by the Hostess/Wonder Bread contract; and (4) the Employer would eliminate one of its delivery routes in Ponca City, Oklahoma.

Mr. Rammage had been a Dolly Madison sales representative in Ponca City for fifteen years prior to the Employer's consolidation of its distribution operations. He had never been represented by the Union, however, and he was

not included in either the Dolly Madison or Hostess/Wonder Bread bargaining units. When the Employer informed the Union of Mr. Rammage's employment and that he was not associated with either bargaining unit, both the Employer and the Union agreed that he should become part of the consolidated unit under the Hostess/Wonder Bread agreement.

Apparently, however, they disagreed about Mr. Rammage's seniority. Mr. Rammage had worked for the Employer longer than any other sales representative in Ponca City, and the Employer considered him to be its best Ponca City employee. Therefore, the Employer sought to dovetail Mr. Rammage in the consolidated unit according to his years of employment rather than his years of participation in the Union. The Union countered that it would breach its duty of fair representation to the employees who were already in one of its two separate bargaining units if it agreed to give Mr. Rammage the seniority the Employer sought for him. Accordingly, the Union insisted that Mr. Rammage be endtailed at the bottom of the consolidated bargaining unit's seniority roster. Ultimately, the Employer acquiesced to the Union's position and endtailed Mr. Rammage.

Because Mr. Rammage's endtailing made him the Employer's least senior employee for route bidding purposes, when the Employer eliminated one of its Ponca City routes some time after its negotiations with the Union, the sales representative who had worked that route was given the option to "bump" Mr. Rammage, or in other words, take over his route. When that sales representative

exercised his option, Mr. Rammage's superior, Rodney Roberts, informed him that he would lose his regular route. In a letter requested by Mr. Rammage, Mr. Roberts attributed Mr. Rammage's demotion to a Union/Employer agreement to use "Union Seniority for Route Bidding." Mr. Roberts also stated orally that Mr. Rammage had been demoted because he "was not in the union." Ultimately, the Employer offered Mr. Rammage a position in its Bartlesville, Oklahoma terminal. Additionally, one of Mr. Rammage's superiors, Kirk Summers, repeatedly warned him that he "would have to join the union." Mr. Summers also stated that Mr. Rammage was transferred "because he was not in the union." Mr. Rammage eventually accepted the Bartlesville position which requires him to make a daily commute of more than seventy miles in each direction.

B.    Analysis

We apply a deferential standard of review to NLRB orders. *NLRB v. Velocity Exp., Inc.*, 434 F.3d 1198, 1201 (10th Cir. 2006). Under this standard, we will enforce NLRB orders if the agency's legal conclusions are reasonable and its factual findings are supported by substantial evidence in the administrative record. *Id.*

The NLRA generally recognizes an employee's right to freely participate or not participate in union or labor organization activities. 29 U.S.C. § 157. To provide meaningful protection of this right, the NLRA prohibits unions from "caus[ing] or attempt[ing] to cause an employer to discriminate against an

employee" in regard to any term of employment in a way that would encourage or discourage union membership or participation. *Id.* § 158(b)(2). Indeed, the Supreme Court has determined that "[t]he policy of the [NLRA] is to insulate employees' jobs from their organizational rights" so that employees may "freely exercise their right to join unions, be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood." *Radio Officers' Union v. NLRB*, 347 U.S. 17, 40 (1954). Moreover, "a loss of seniority requested by a union and enforced by an employer" may constitute "discrimination to encourage union membership." *NLRB v. Am. Can Co.*, 658 F.2d 746, 754 (10th Cir. 1981).

In this case, the NLRB concluded that "in the context of a unit merger, a union and an employer are not lawfully permitted to dovetail the seniority of represented employees while endtailing previously unrepresented employees." This conclusion reflects a reasonable application of the NLRA and the legal principles articulated above. Indeed, the Union's insistence on Mr. Rammage's endtailing coupled with the Employer's acquiescence and its statements that Mr. Rammage was demoted because he was not in the Union reasonably suggest that the Union caused the Employer to discriminate against Mr. Rammage in a way that encourages Union participation.

Furthermore, the NLRB reasonably rejected the Union's defense that it was bound by its duty of fair representation to insist on Mr. Rammage's endtailing.

-11-

As the NLRB pointed out, the Union clearly eschewed any duty to the Hostess/Wonder Bread unit when it agreed to dovetail the seniority of the Dolly Madison employees. Indeed, the integrity of the Hostess/Wonder Bread unit's seniority roster was no less compromised by dovetailing only the Dolly Madison employees than it would have been if Mr. Rammage were also dovetailed. In fact, in relation to the Hostess/Wonder Bread employees, the only discernable difference between the dovetailed Dolly Madison employees and the endtailed Mr. Rammage was that Mr. Rammage had not previously been represented by the Union. Accordingly, we find that the NLRB reasonably concluded that the Union's insistence on Mr. Rammage's endtailing and loss of seniority for route bidding purposes caused the Employer to discriminate against Mr. Rammage in a way that encouraged his union participation in violation of 29 U.S.C. § 158(b)(2).

### III. CONCLUSION

It is permissible to conclude that 29 U.S.C. §153(b) authorizes the NLRB to act through only two members under the present circumstances. Furthermore, the NLRB's decision in this case reflects a reasonable application of the law. Accordingly, we uphold the NLRB's authority to act in this case, AFFIRM its decision, and enter judgment enforcing its order in full.