United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 26, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 05-61168

————————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

UNITED STATES POSTAL SERVICE,

Respondent.

————————————————————————

Application for Enforcement of an Order
of the National Labor Relations Board

————————————————————————

Before JONES, Chief Judge, DAVIS and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The National Labor Relations Board ("the Board") seeks enforcement of a broad cease and desist order issued against the United States Postal Service facility in Waco, Texas ("the Postal Service-Waco") for repeated failures to respond to union information requests. There is no dispute over the facts; the Postal Service concedes that numerous information request violations occurred. The only issue on review is whether the cease and desist order is overly broad. We find that it is and modify the order accordingly.

## I

In October 2002, the Board found that the Postal Service-Waco had committed twelve violations of the National Labor Relations Act ("NLRA") §§ 8(a)(1) and 8(a)(5), 29 U.S.C. §§ 158(a)(1) and 158(a)(5), by failing or refusing to furnish and/or timely furnish the postal workers' union with presumptively relevant requested information. In March 2003, the Postal Service-Waco instituted new information request procedures in an attempt to prevent future information request violations. Evidence reveals that these procedures were not always followed. In July 2003, the union charged further violations for failing or refusing to furnish requested information. An administrative law judge ("ALJ") confirmed that violations occurred, finding that over the two-month period at issue, May and June 2003, the Postal Service-Waco did not respond to four of 68 information requests.

After the first series of violations in 2002, the ALJ imposed a narrow cease and desist order, which prohibited the Postal Service-Waco from violating the Act "in any like or related manner" to the information request violations. This order would allow contempt proceedings against the Postal Service-Waco if evidence suggested it had committed further information request violations. The second series of violations, in 2003, took place prior to our enforcement of the narrow order; that is, the narrow order was not in effect at the time the second violations occurred and contempt proceedings were not yet available. Thus, as a result of the second series of violations, the ALJ imposed a broader cease and desist order; this time the order prohibited the Postal Service-Waco from "[i]n any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act." Section 7 of the NLRA, 29 U.S.C. § 157, sets out all of the rights of employees and provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

*Id.* Subsequently, the Board affirmed the broad cease and desist order, over the objection of one board member.

## II

### A

We review the Board's findings of fact for "substantial evidence." 29 U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."). "Substantial evidence is 'such relevant evidence that a reasonable mind would accept to support a conclusion.'" *Valmont Indus. v. NLRB*, 244 F.3d 454, 463 (5th Cir. 2001) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

Although "[t]he NLRB's legal conclusions are reviewed de novo," *NLRB v. Thermon Heat Tracing Servs.*, 143 F.3d 181, 185 (5th Cir. 1998), we review the propriety of the Board's remedial orders under a more deferential standard. *NLRB v. Laredo Packing Co.*, 730 F.2d 405, 407 (5th Cir. 1984) ("The Board's remedial power in this regard is wide and discretionary; subject to scanty judicial review."). "The Board's order must not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *NLRB v. DMR Corp.*, 795 F.2d 472, 477 (5th Cir. 1986) (quoting *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 540 (1942)). But the Act's regulatory framework under which we have the authority to review orders, NLRA § 10(e), 29 U.S.C. § 160(e), foresees the role of the court as

3

more than "mere perfunctory executors of the Board's unrestrained will." *NLRB v. Ford Motor Co.*, 119 F.2d 326, 330 (5th Cir. 1941). Therefore, we will generally defer to the Board's remedial decisions where it acts within its statutory authority, though we will review the Board's orders to ensure that it does not exceed that statutory authority. *See May Dep't Stores Co. v. NLRB*, 326 U.S. 376, 392 (1945) ("While the Board has been delegated initially the exclusive authority to prevent unfair labor practices, courts, which are called upon to enforce such orders by their own decrees, may examine its scope to see whether, on the evidence, they go so beyond the authority of the Board as to require modification as a matter of law before enforcement.").

B

The Board's statutory authority to issue cease and desist orders stems from NLRA § 10(c), 29 U.S.C. § 160(c), which states that where the Board determines a violation of the Act has occurred, "the Board shall . . . cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice . . . as will effectuate the policies of this Act." *Id.* Of this statutory provision, the Supreme Court has stated,

> Under § 10(c), the Board's authority to remedy unfair labor practices is expressly limited by the requirement that its orders "effectuate the policies of the Act." Although this rather vague statutory command obviously permits the Board broad discretion, at a minimum it encompasses the requirement that a proposed remedy be tailored to the unfair labor practice it is intended to redress.

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984); *see also NLRB v. District 50, United Mine Workers*, 355 U.S. 453, 458 (1958) ("The Board's discretionary authority to fashion remedies to purge unfair labor practices necessarily has a broad reach. But the power is not limitless; it is contained by the requirement that the remedy shall be 'appropriate,' and shall 'be adapted to the situation which calls for redress.'") (internal citations omitted). This is consistent with the remedial

4

nature of the Board's authority. *See Florida Steel Corp. v. NLRB*, 587 F.2d 735, 746 (5th Cir. 1979) ("We have held many times that the orders of the Board are required to be remedial and not punitive.").

Thus, the question before us is whether the cease and desist order in this case, covering the entirety of Section 7, is tailored to the unfair labor practice it is intended to redress. We are aided in this task by the extensive caselaw, both from the Supreme Court and within this circuit, speaking to the propriety broad cease and desist orders)) and specifically addressing orders prohibiting any violation of Section 7, as the Board imposed here. The caselaw establishes that such broad orders will rarely be justified.

In *NLRB v. Express Publishing, Inc.*, 312 U.S. 426 (1941), the Supreme Court discussed at length the Board's ability to issue broad cease and desist orders. *Id.* at 432-441. There the Court made clear that cease and desist orders reaching other violations beyond those proven are disfavored. The Court established a high standard to warrant the use of such an order, stating, "To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past." *Id.* at 437. In that case, the Board found that the respondent had refused to bargain, as required by the Act, and imposed an order "direct[ing] respondent not to violate 'in any manner' the duties imposed on the employer by the statute." *Id.* at 432. To the extent that the order prohibited the respondent from interfering with the employees' right to bargain, the Court found it unproblematic. But the Court restricted the scope of the order where it prohibited conduct unrelated to the bargaining violations proven. *Id.* at 438 ("An appropriate order in the circumstances of the present case would go no further than to restrain respondent from any refusal

5

to bargain and from any other acts in any manner interfering with the Guild's efforts to negotiate.").

The judicial authority to enjoin actions is broad but with clear boundaries, requiring some relation between the acts proven and the acts restrained. *Id.* at 435 ("A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past."). The Court determined that, as a matter of Congressional intent, the Board's authority to issue orders should be similarly limited. *Id.* ("[W]e can hardly suppose that Congress intended that the Board should make or the court should enforce orders which could not appropriately be made in judicial proceedings."). Therefore, the Court stated, "Congress did not contemplate that the courts should, by contempt proceedings, try alleged violations of the National Labor Relations Act not in controversy and not found by the Board and which are not *similar or fairly related* to the unfair labor practice which the Board has found." *Id.* (emphasis added).

We have on many occasions repeated this concern that orders be limited to those violations that bear some relation to the violations demonstrated in the record. *See NLRB v. Builders Supply Co.*, 410 F.2d 606, 611 (5th Cir. 1969) ("The courts have long been hesitant to extend the order beyond the scope of the particular unfair labor practices which were committed."); *NLRB v. A & P*, 406 F.2d 1173, 1175 (5th Cir.1969) ("[W]e are constrained to modify the order to the extent that it enjoins the company from committing violations unrelated to the kind involved here."); *NLRB v. Mayes Bros., Inc.*, 383 F.2d 242, 248 (5th Cir. 1967) (rejecting a broad order and stating, "An order restraining Company interference 'in any like or related manner' with employees' organizational rights will protect the Company from the possibility of contempt proceedings if in the future it commits

some new violation unlike and unrelated to the violation now found."); *Southwire Co. v. NLRB*, 383 F.2d 235, 238 (5th Cir. 1967) ("Violations outside the class with which we are dealing should be left to the normal unfair practice procedures under the Act rather than to the contempt power of the court.").

Requiring relatedness between the violations on record and the violations prohibited in the order does not mean that a broad order is never justified. In fact, in *Express Publishing*, the Court cited to several cases where broad orders were justified, noting that in those cases "the record disclosed persistent attempts by varying methods to interfere with the right of self-organization in circumstances from which the Board or the court found or could have found the threat of continuing and varying efforts to attain the same end in the future." *Express Publishing*, 312 U.S. at 438. Soon after, the Court reaffirmed that a broad order can be justified by stating that it would refuse to enforce a broad order "without a clear determination by the Board of an attitude of opposition to the purposes of the Act to protect the rights of employees generally." *May Dep't Stores*, 326 U.S. at 392. In other words, an employer who challenges the purposes of the Act, challenges the entirety of the Act. In such cases, an order encompassing the entirety of the Act can be enforced, not because the relatedness requirement falls away, but because the relatedness requirement is satisfied.

We have understood these cases to require that "an order prohibiting conduct beyond the specific acts found by the Board as unfair labor practices should be limited to those cases where the Respondent had demonstrated a proclivity to violate the Act." *Southwire Co.*, 383 F.2d at 237; *see also A & P*, 406 F.2d at 1175 ("To limit and protect its contempt jurisdiction, this Court has not allowed orders so broad as to go beyond the class of violations involved in the case in the absence of a strong showing that the company has a proclivity to disregard the Act in its entirety."). Further, we have considered whether "the Company's conduct shows such an attitude of opposition to the

7

purposes of the Act as would justify an order restraining all possible future violations of the Act." *Mayes Bros., Inc.*, 383 F.2d at 248; *see also NLRB v. Bama Co.*, 353 F.2d 320, 323-24 (5th Cir. 1965) ("[W]e cannot say that the Board was not warranted in invoking this broad form of order on the basis of an attitude of opposition to the purposes of the Act."). Consistent with *Express Publishing* and *May Dep't Stores*, these standards are meant to determine whether the employer's conduct demonstrates hostility to the Act and a willingness to act on that hostility.

In the present case, the Board applied *Hickmott Foods, Inc.*, 242 NLRB 1357 (1979), which states that a broad cease and desist order is warranted only "when a respondent is shown to have a proclivity to violate the Act or has engaged in such egregious or widespread misconduct as to demonstrate a general disregard for the employees' fundamental statutory rights." *Id.* Although the language of this standard is clearly consistent with the caselaw of the Supreme Court and of this circuit, we must decide whether the Board's application of this standard is legally correct.

C

When applying these standards, we have enforced broad orders where the facts warrant it. For example, we enforced a broad order where there were threats against individual employees, threats to get rid of overtime and otherwise change working conditions, and a statement by the company president that there would be no union. *NLRB v. Moore Dry Kiln Co.*, 320 F.2d 30, 34-35 (5th Cir. 1963). We also enforced a broad order where "the Board found many violations which cumulatively composed a picture of over-all coercion through threats, promises and interrogation." *NLRB v. Bush Hog, Inc.*, 405 F.2d 755, 757 (5th Cir. 1968).

There are many cases, though, where we have refused to enforce broad orders, even where the violations were wide-ranging. In *NLRB v. Southwire Co.*, 352 F.2d 346 (5th Cir. 1965), we did

8

not enforce a broad cease and desist order where the employer had explicit anti-union animus, established a no solicitation-rule, and discriminately discharged four employees. *Id.* at 350. Following more discriminatory discharges by the same employer, we again refused to enforce a broad order. *Southwire Co.*, 383 F.2d at 238 (5th Cir. 1967). In *NLRB v. Safeway Steel Scaffolds Co.*, 383 F.2d 273 (5th Cir. 1967), we found "there was no showing of a proclivity to violate the Act or certain sections of the Act," *id.* at 282, where the employer had refused to bargain in good faith by threatening and then enforcing a wage reduction and by firing seven striking employees. In *NLRB v. Curtis Mfg. Co.*, 421 F.2d 1335 (5th Cir. 1970), we affirmed the finding that the company had made a discriminatory discharge, "threats of economic reprisals against union adherence[,] and threats of plant shut downs if the union was successful in its organization attempts, etc." *Id.* at 1337. But we declined to enforce a broad order, stating, "Although the violations here may be considered extensive, a representation election was held, the Union won, and in due course a collective bargaining agreement has been entered into between the employer and the Union." *Id.*

In this case, the Board relied on seven factors to justify the use of a broad order: 1) repeated information request violations at the Waco facility; 2) the Board had already imposed on the Waco facility a narrow order in 2002; 3) information request violations may mask other violations; 4) the Postal Service presented only weak defenses for their actions; 5) the Postal Service, nationwide, has committed numerous information request violations over the past two decades; 6) the Board issued broad orders in three recent cases of information request violations at other Postal Service facilities in Texas; 7) on the same day the Board affirmed the broad order in this case, it also affirmed a broad order against the Postal Service-Albuquerque for information request violations and discriminatory discharge. *United States Postal Service*, 345 N.L.R.B. No. 25 (Aug. 27, 2005), 2005 WL 2102982,

*2.

We agree with the dissenting member of the Board; these seven factors are not legally sufficient to justify the use of a broad order. *Id.* at *4. These factors pale in comparison to those prior cases where we have refused to enforce a broad order and do not demonstrate that the Postal Service-Waco has an attitude of opposition to the purposes of the Act or a proclivity to violate the Act. The Board attempts to connect these information request violations to the entirety of Section 7 rights by asserting that information request violations can mask other violations. Although this is clearly true, there is no evidence on the record that the information request violations in this case were used or intended to be used to mask other violations or had the effect of generally interfering with employee rights. In fact, there is no evidence on the record that there have ever been any unfair labor practices at this facility beyond information request violations. Such speculation that future information request violations may be used to mask other unfair labor practices, without evidence that the employer is likely to commit other unfair labor practices, cannot be used to support a broad order. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984) ("[The Board's] remedy must be sufficiently tailored to expunge only the *actual*, and not merely *speculative*, consequences of the unfair labor practices.") (emphasis in original).

Further, the Board's attempt to cast the previously imposed narrow order as ineffective is wholly unconvincing. The Board states that the second series of violations "suggest[s] the inadequacy of this [narrow] order to deter future violations of employee rights." *United States Postal Service*, 2005 WL 2102982, *2. But, as the Board itself later points out, "the acts alleged as unfair labor practices here took place prior to the court's enforcement of the order in the prior case." *Id.* at *3 n. 9. In other words, the Board treats the narrow order as ineffective even though the narrow

10

order had not yet taken effect.

Lastly, the unfair labor practices identified at other Postal Service facilities must be understood in context.[1] As the dissenting member of the Board points out, "[T]he Postal Service is a massive, far-flung and decentralized operation." *Id.* at \*7. Violations at one facility do not necessarily implicate other facilities. The Board has made no attempt to connect the violations at the Waco facility to the violations at other facilities. *See, e.g.*, *NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 961 (2d Cir. 1988) (finding that violations at various locations managed by the same district supervisor justified an order covering all locations managed by that district supervisor). Additionally, considering violations at other facilities requires considering compliance at other facilities; to do otherwise obviously distorts the company's attitude toward the purposes of the Act. *See, e.g.*, *Torrington Extend-A-Care Employee Ass'n v. NLRB*, 17 F.3d 580, 586 (2d Cir. 1994) ("Although the Board emphasized that [the Respondent] committed over 130 violations at 33 sites, the evidentiary weight of these statistics is substantially diminished when related to the size of [the Respondent] and the types of violations found."). Given the sheer size of the Postal Service, the evidence relied upon by the Board shows that violations are relatively isolated incidents and rarely flagrant. Once properly understood in context, the record in this case does not demonstrate that

---

[1] The Postal Service argues that all information regarding violations from other facilities should not be considered because such evidence was not properly before the Board. The Postal Service did not petition for reconsideration or rehearing, and therefore never objected to the use of this evidence by the Board. The Postal Service has given no reason for its failure to make such a petition. As a result, we cannot now consider the question. 29 U.S.C. § 160(e); *Woelke & Romero Framing v. NLRB*, 456 U.S. 645, 665-66 (1982). In any event, the Board may take judicial notice of prior Board proceedings involving the same party. *See NLRB v. American Art Industries, Inc.*, 415 F.2d 1223, 1227 (5th Cir. 1969); *see also NLRB v. Joseph*, 605 F.2d 466, 467 (9th Cir. 1979) ("Judicial notice was taken of that earlier proceeding under the rule that the Board may take judicial notice of its own proceedings.").

violations of the Act at other facilities suggest that employees of the Postal Service-Waco are at risk of unfair labor practices beyond information request violations.

## III

In sum, the Supreme Court has established a high standard to justify the use of an order reaching all possible violations of Section 7 rights. We have applied this high standard by requiring the respondent's conduct to demonstrate an attitude of opposition to the purposes of the Act or a proclivity to violate the Act and by refusing to enforce a broad order even where the violations were extensive. The Board erred in concluding that the facts on record meet the standard for imposing a broad order. In this case, the Board's order extends well beyond those violations which bear a resemblance to the information request violations found and reaches violations which cannot be reasonably anticipated based on the respondent's past conduct. *See Express Publishing*, 312 U.S. at 437. Therefore, we modify paragraph 1(e) of the Board's cease and desist order by replacing "In any other manner" with "In any like or related manner".

The Board's order is enforced as modified.