**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL LABOR RELATIONS
BOARD,

        Petitioner,

    v.

UNITED STATES POSTAL SERVICE,

        Respondent.

No. 06-9513

---

**APPLICATION FOR ENFORCEMENT OF AN ORDER**
**OF THE NATIONAL LABOR RELATIONS BOARD**
**(NOS. 28-CA-19148(P), 28-CA-19149(P), 28-CA-19327(P))**

---

Stacy Garrick Zimmerman, Attorney (Jill A. Griffin, Supervisory Attorney;
Ronald Meisburg, General Counsel; John E. Higgins, Jr., Deputy General
Counsel; John H. Ferguson, Associate General Counsel; and Aileen A.
Armstrong, Deputy Associate General Counsel, with her on the brief), National
Labor Relations Board, Washington, DC, for Petitioner.

Teresa A. Gonsalves, Counsel of Record, United States Postal Service,
Washington, DC (Stephan J. Boardman and Howard J. Kaufman, United States
Postal Service, Washington, DC; Steven E. Coney and Isabelle G. Dorlan, of
counsel, Dallas, Texas, with her on the briefs), for Respondent.

---

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Petitioner National Labor Relations Board ("NLRB" or "Board") seeks enforcement of an order issued against the United States Postal Service ("USPS" or "Postal Service") for violations of the National Labor Relations Act ("NLRA" or "Act") at three facilities within Albuquerque, New Mexico's main post office. *See United States Postal Serv.*, 345 N.L.R.B. No. 26 (Aug. 27, 2005). As part of a remedy for violations of NLRA section 8(a)(1), (a)(3), and (a)(5), 29 U.S.C. § 158(a)(1), (3), (5), the Board ordered the USPS to, among other things, cease and desist from "[i]n any other manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed them by Section 7 of the Act." *United States Postal Serv.*, 345 N.L.R.B. No. 26, at 2.[1] The Board also ordered

---

[1]In its entirety, part 1 of the Board's order states:

> The National Labor Relations Board orders that the Respondent, United States Postal Service, Albuquerque, New Mexico, its officers, agents, successors, and assigns, shall
>
> 1. Cease and desist from:
> (a)   Threatening employees with unspecified reprisals because they engaged in union or protected activity.
> (b)   Denying an employee the rights of union representation during an investigatory interview that the employee reasonably believes may result in disciplinary action.
> (c)   Refusing to permit an employee to speak with the employee's union representative prior to an investigatory interview that the employee reasonably

(continued...)

that language to this effect be posted at the three facilities within the main post office as part of a notice to employees about their rights. *Id.* at 3. The Postal Service challenged the breadth of the remedial language before the Board and renews its challenge before this court. Exercising jurisdiction pursuant to 29 U.S.C. § 160(e), we enforce the Board's order.

-----

[1](...continued)
believes may result in disciplinary action.

(d) Failing and refusing to inform an employee and the employee's union representative of the specific charges that are to be discussed during an investigatory interview that the employee reasonably believes may result in disciplinary action.

(e) Threatening employees that they will be discharged for their protected or union activities.

(f) Disciplining employees because of their protected or union activities.

(g) Discharging employees because of their protected or union activities.

(h) Refusing to bargain collectively with the American Postal Workers Union, Local No. 380, AFL-CIO by failing and refusing to provide requested information that is relevant and necessary to the Union as the collective bargaining representative of those Unit employees described in the existing collective bargaining agreement and found appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act.

(i) In any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

*United States Postal Serv.*, 345 N.L.R.B. No. 26, at 2. Clause (i) is the portion of the order challenged in this enforcement action.

## II. BACKGROUND

The three facilities within Albuquerque's main post office are the Vehicle Maintenance Facility ("VMF"), the Auxiliary Service Facility ("ASF"), and the main plant.[2] It is undisputed that NLRA violations involving two union craft directors[3] and all VMF employees occurred at the three facilities in 2003. Beginning in September 2003, when VMF craft director John Orlovsky made an information request for forms he believed union workers were unlawfully asked to sign, VMF Manager Michael Quintana and VMF Supervisor Thomas Smith subjected Orlovsky to nine retaliatory disciplinary actions, including official discussions, fact-finding meetings, a letter of warning, suspensions, and, ultimately, discharge. Smith and Quintana also prevented Orlovsky from conferring with a union representative during two fact-finding meetings and failed to disclose the charges against him prior to one of the meetings, both in violation of the union's collective bargaining agreement. After Orlovsky's discharge, Smith held a mandatory meeting with all VMF employees at which he asserted that employees agreed to restrict their behavior when they came to work for the

[2]The Vehicle Maintenance Facility ("VMF") is responsible for repairing and maintaining all Postal Service vehicles in the Albuquerque district. Albuquerque mail is processed at the Auxiliary Service Facility ("ASF") and the main plant.

[3]A postal worker union craft director files and processes grievances, submits information requests to the Postal Service, and performs other union steward duties associated with the maintenance of a collective bargaining agreement.

Postal Service, chastised union members for allowing Orlovsky to "squander union dues" with his conduct, and threatened all employees with discipline or discharge for engaging in the types of "self-destructive behavior" in which Orlovsky engaged. Finally, also in 2003, the ASF's craft director, Charles Trujillo, made several information requests of USPS management regarding management's actions at the ASF and the main plant. Trujillo's requests were made for the purposes of investigating potential grievances and processing filed grievances. Postal Service management failed to respond to two of these requests.

An administrative law judge ("ALJ") heard testimony and received evidence in June 2004 finding violations of NLRA section 8(a)(1) and (a)(3) in connection with Smith's and Quintana's actions toward Orlovsky, a violation of section 8(a)(1) in connection with Smith's threats to all VMF employees, and two violations of section 8(a)(5) in connection with Trujillo's unfulfilled ASF and main plant information requests. When considering an appropriate remedy for the multiple violations, the ALJ took into account both the Postal Service's nationwide history of section 8(a)(5) information-request violations, as well as a January 2003 consent judgment entered by this court between the Board and the USPS involving information-request violations at three other Albuquerque post offices. The ALJ ultimately recommended a broad cease-and-desist order containing the remedial "in any other manner" language now challenged before

-5-

this court. *United States Postal Serv.*, 345 N.L.R.B. No. 26, at 23. The ALJ also recommended notice posting at all USPS facilities in the city of Albuquerque. *Id.* at 21.

The USPS contested both the geographic scope of the posting requirement and the breadth of the language in the ALJ's recommended order. As to the breadth of the cease-and-desist language, it argued a broad order was inappropriate under NLRB precedent in *Hickmott Foods, Inc.*, 242 N.L.R.B. 1357 (1979), because its violations were limited to one location and were committed by a small number of low-level supervisors; it contended its misconduct did not amount to egregious or widespread violations and did not demonstrate a proclivity to violate the Act, as required for the issuance of a broad remedial order under *Hickmott Foods*. The USPS, furthermore, objected to the ALJ's consideration of nationwide NLRA violations when determining that the USPS had a proclivity to violate the Act. It claimed the number of nationwide violations paled in comparison to its long history of union cooperation.

A three-member NLRB panel modified the scope of the ALJ's recommendation to require posting only at the three facilities within Albuquerque's main post office rather than in all Albuquerque city postal facilities, but affirmed the broad injunctive language recommended by the ALJ. *United States Postal Serv.*, 345 N.L.R.B. No. 26, at 1. With one member dissenting as to the need for broad cease-and-desist language, the panel

determined the violations at Albuquerque's main post office "demonstrated a proclivity to respond unlawfully to the [USPS] employees' meaningful exercise of their statutory rights." *Id.* at 2. The Board stated its determination that a broad cease-and-desist order was appropriate based on the series of section 8(a)(1) and (a)(3) violations by Quintana and Smith against Orlovsky, and the section 8(a)(1) violation resulting from the meeting Smith held with all VMF employees after Orlovsky's discharge. *Id.* at 1–2. The latter incident was particularly significant in the Board's determination that the USPS had a proclivity to violate the Act. *Id.* at 2.

Additionally, as had the ALJ, the Board referenced the Tenth Circuit's entry of a January 2003 consent judgment between the NLRB and the USPS, which had been precipitated by information-request violations at three other USPS facilities in Albuquerque and which contained the same broad remedial language challenged here. *Id.* at 1 (citing *NLRB v. United States Postal Serv.*, No. 02-9587 (10th Cir. Jan. 8, 2003) (unpublished consent judgment)). The Board observed that the NLRA violations arising in the wake of Orlovsky's information request amounted to the "very conduct which the previous order sought to remedy." *Id.* Although the Board's order in the instant Albuquerque case also referenced a decision issued the same day involving information-request violations at Waco, Texas, postal facilities, *United States Postal Serv.*, 345 N.L.R.B. No. 25 (2006), the Board did not explicitly discuss the Postal Service's

history of nationwide violations in justifying its broad cease-and-desist order.

*United States Postal Serv.*, 345 N.L.R.B. No. 26, at 1.

## III.   DISCUSSION

This court has the authority to enforce, modify, or set aside an NLRB order. 29 U.S.C.§ 160(e).  Enforcement is appropriate when "the agency has correctly applied the law and its findings are supported by substantial evidence in the record as a whole."  *NLRB v. Velocity Express*, 434 F.3d 1198, 1201 (10th Cir. 2006) (quotation omitted).  "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  When reviewing a Board-ordered remedy for NLRA violations, appellate courts must recognize the Board's "primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 898 (1984) (citing 29 U.S.C.§ 160(c)). This court's scope of review is narrow, *id.*, and should give "special respect" to the Board's choice of remedy, *Velocity Express*, 434 F.3d at 1202.  We should not, therefore, disturb the Board's chosen remedy unless it can be shown that "the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." *Id.*

Because the USPS does not challenge the Board's factual findings or its conclusions regarding the occurrence of section 8(a)(1), (a)(3), and (a)(5)

-8-

violations, the only issue for this court's determination is the permissibility of the broad, "in any other manner" language the Board thought appropriate to include in its remedial order. The breadth of a remedial order "must depend upon the circumstances of each case." *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 436 (1941). To be a permissible exercise of the Board's discretion, an order that enjoins violations other than those found by the Board is permissible if it appears the enjoined violations "bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of [its] conduct in the past." *Id.* at 437. A key inquiry is whether the employer's actions display "an attitude of opposition to the purposes of the Act to protect the rights of employees generally." *May Dept. Stores Co. v. NLRB*, 326 U.S. 376, 392 (1945).

Recognizing that a broad remedial order is an extraordinary remedy, the Board itself has said the "in any other manner" language at issue here is "warranted only when a respondent is shown to have a proclivity to violate the Act or has engaged in such egregious or widespread misconduct as to demonstrate a general disregard for the employees' fundamental statutory rights." *Hickmott Foods*, 242 N.L.R.B. at 1357. Requisite disregard for employees' rights may be demonstrated where, for example, section 8(a)(1) violations have occurred prior to or concurrently with a discriminatory discharge, *id.*, or where an employers'

conduct "goes to the heart of the Act," *Florida Steel Corp.*, 223 N.L.R.B. 174, 175 (1976), by burdening or interfering with workers' section 7 rights.[4]

After reviewing the record, and giving appropriate deference to the NLRB's expertise in selecting a remedy, *Velocity Express*, 434 F.3d at 1202, this court concludes there was sufficient evidence from which the Board could have determined the violations in Albuquerque's three main post office facilities demonstrated opposition to the purposes of the Act and justified a broad remedial order. *See May Dept. Stores Co.*, 326 U.S. at 392. The Board determined, and the USPS does not contest, that Orlovsky's request for information touched off an escalating series of NLRA violations demonstrating animus towards Orlovsky's section 7 rights. In particular, Orlovsky was not only unable to obtain information on behalf of the union, but also received a warning, suspensions and, ultimately, a discharge, in retaliation for asserting basic union rights. He was, moreover, twice denied the opportunity to speak with a union representative and,

---

[4]The *Florida Steel* decision, 223 N.L.R.B. 174, 175 (1976), predates the Board's pronouncement in *Hickmott Foods* that broad remedial orders would, in the future, be reserved for a narrow set of cases. *See Hickmott Foods, Inc.*, 242 N.L.R.B. 1357, 1357 (1979). *Florida Steel* is cited in *Hickmott Foods*, however, as a case whose facts would justify a broad remedial order even under the *Hickmott Foods* test. *Id.* at 1357 & n.4. *Florida Steel* involved threats by several supervisors against steelworkers for collective bargaining and other union activity, in violation of section 8(a)(1), and a discriminatory discharge, in violation of section 8(a)(3). *Florida Steel Corp.*, 223 N.L.R.B. at 174. The NLRB determined broad remedial language was necessary because Florida Steel's conduct went "to the heart of the Act." *Id.* at 175.

on one occasion, denied the chance to hear the charges against him in connection with fact-finding meetings.

Management's actions, moreover, were not limited to Orlovsky alone. At the meeting that Supervisor Smith held with all VMF employees a week after Orlovsky's termination, Smith threatened the employees with discipline or discharge if they chose to engage in the same behavior as Orlovsky. The Board interpreted Smith's remarks as an "unlawful[] warn[ing] . . . that a similar fate awaited those who encouraged zealous union action." *United States Postal Serv.*, 345 N.L.R.B. No. 26, at 2. During his lecture, Smith compared the workplace to a lifeboat and told employees that people in a lifeboat situation have "limited alternatives of appropriate behavior available to them." Smith indicated that Orlovsky's error was trying to "determine the direction of the VMF" through complaining, whining, and threatening management with demands. He then summarized each of Orlovsky's grievances, indicated they were illegitimate uses of union resources, and suggested any union member who tolerated Orlovsky's conduct bore responsibility for and should be angry at Orlovsky. Smith labeled Orlovsky's questions during stand-up meetings as "interruptions" and "disruptions," and advised Orlovsky's "followers" to obey supervisors' directions without complaints or questions.

According to two employees who were present at the meeting, Smith also held up two file folders, a fat one which he said represented all of the work Smith

and management had done to improve the lives of VMF employees, and a thin one, containing Orlovsky's grievances, which Smith said represented the work the union had done to improve employees' lives. Smith's message, according to the employees, was that the grievances Orlovsky filed were frivolous. The employees also testified they understood Smith's lecture to be a warning that "rocking the boat," or engaging in union activities, could lead to termination.

The nature of Smith's threats to the VMF employees are particularly consequential to this court's determination that members of USPS management displayed "an attitude of opposition to the purposes of the Act." *May Dept. Stores Co.,* 326 U.S. at 392. The breadth of Smith's threats implicated much, if not all, section 7 activity: During Smith's speech, workers were not only cautioned against seeking information from management, but were also told not to speak out in meetings with management and not to question supervisors. Smith essentially indicated to workers that, if asserting union rights required acting outside the range of management-sanctioned behavior, employees should remain silent or face consequences similar to Orlovsky's. Smith's speech also effectively encouraged union members to reign in union stewards, craft directors, and others who make legitimate demands on management. By displaying such opposition to union organization and union rights, Smith created a risk that Postal Service employees would not feel free to enjoy the right of self-organization, engage in protected union activity, or benefit from the guarantees provided to them in their

collective bargaining agreement and NLRA section 7. Smith's actions, therefore, went to the "heart of the Act," *Florida Steel Corp.*, 223 N.L.R.B. at 175, and, along with the multiple violations of Orlovsky's rights by Smith and Quintana, justify the Board's decision to craft a broadly-worded remedial order.

Moreover, as the Board noted, the violations at the three facilities within Albuquerque's main post office occurred less than a year after the USPS voluntarily agreed, in connection with information-request violations at three other Albuquerque postal facilities, to a broad cease-and-desist order that contained the very language in dispute here. *United States Postal Serv.*, 345 N.L.R.B. No. 26, at 1. Although the prior Albuquerque order applied to facilities other than those at issue in this appeal, it was reasonable for the NLRB to view the recurrence of anti-union activity within the same geographic area as further evidence of the Postal Service's proclivity to violate the Act.

The Postal Service argues this court's determination should be guided by the Fifth Circuit's recent modification of a broad cease-and-desist order at Waco, Texas, postal facilities. See *NLRB v. United States Postal Serv.*, 477 F.3d 263, 271 (5th Cir. 2007), *modifying order in United States Postal Serv.*, 345 N.L.R.B. No. 25 (2005). This court, however, concludes the Waco case is easily distinguishable. The only NLRA violations in Waco involved four unfulfilled information requests which occurred after an earlier series of twelve unfulfilled information requests. *Id.* at 265. In contrast, the Postal Service's actions at

Albuquerque's main post office facilities began with information requests, but, as to Orlovsky and the VMF employees, did not end there. The Waco case in no way involved the multiple instances of retaliatory, progressive discipline or threats to all employees that occurred in Albuquerque. Furthermore, there was not yet a cease-and-desist order in place in Waco to address the twelve prior violations when the subsequent four violations occurred. *Id.* at 270. Accordingly, while the Fifth Circuit's modification of the Waco order may have been appropriate, the same modification is not required here.

In concluding the breadth of the Board's remedial order is appropriate, this court rejects the Postal Service's attempts to argue its size, decentralized structure, small number of nationwide violations, and long history of good labor relations negate the Board's proclivity determination. Although the ALJ's recommendation accorded some weight to USPS violations nationwide, *see United States Postal Serv.*, 345 N.L.R.B. No. 26, at 20-21, the Board relied solely on the violations that occurred in Albuquerque in crafting its order. And, although the Board did refer by incorporation to the remedy ordered in its now-overruled Waco decision*, id.* at 1, its proclivity determination was based on its undisputed finding regarding anti-union animus and retaliation towards Orlovsky and threats to all VMF employees. *Id.* at 2. ("[A]fter the Respondent unlawfully disciplined and discharged the steward [Orlovsky], the Respondent unlawfully warned the assembled employees that a similar fate awaited those who

-14-

encouraged zealous union action. By these actions, the Respondent demonstrated a proclivity to respond unlawfully to the employees' meaningful exercise of their statutory rights."). Furthermore, the Postal Service provided no evidence to substantiate its claims about its positive, long-term relationship with the postal workers' union, thereby preventing both the Board and this court from considering the merits of such an argument.

## IV.   CONCLUSION

The NLRB's determination that the Postal Service has a proclivity to demonstrate opposition to workers' section 7 rights is supported by substantial evidence. The cease-and-desist order's inclusion of language enjoining management at Albuquerque's main post office from interfering "in any . . . manner" with workers' section 7 rights is, therefore, a remedy "that effectuates the policies of the Act." *Sure-Tan, Inc.*, 467 U.S. at 398. Accordingly, the Board's order will be **ENFORCED** and posting will be required at the three facilities within Albuquerque's main post office.

*06-9513, National Labor Relations Board v. U.S. Postal Service.*

**TYMKOVICH**, Circuit Judge, concurring.

I concur, but write to add a few comments about the scope of the remedy imposed by the NLRB.

The NLRB's power to select a remedy is broad, subject to limited judicial review. *Dayton Tire & Rubber Co. v. NLRB*, 591 F.2d 566, 570 (10th Cir. 1979). "[W]e review only to ensure the NLRB acted within reasonable bounds and substantial evidence supports the order." *NLRB v. Velocity Express, Inc.*, 434 F.3d 1198, 1201 (10th Cir. 2006). We should not disturb an order of the NLRB unless it attempts "to achieve ends other than those . . . fairly . . . said to effectuate the policies of the [National Labor Relations] Act . . . includ[ing] the promotion of industrial peace, the prevention of unfair labor practices and protection [of] victimized employees." *Dayton Tire & Rubber,* 591 F.2d at 570. In effectuating the policies of the Act, the NLRB's "proposed remedy [must] be tailored to the unfair labor practice it is intended to redress." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984). A failure to reasonably tailor the remedy is arbitrary and capricious. *See Velocity Express*, 434 F.3d at 1206 (Murphy, J. concurring and dissenting).

We have held that injunctive relief is a powerful remedy to "be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002). More specifically, in this circuit we allow a broad order enjoining all violations of the National Labor

Relations Act only where the defendant has engaged in "persistent attempts by varying methods to interfere with employee rights."[1] *NLRB v. Process & Pollution Control Co.*, 588 F.2d 786, 792 (10th Cir. 1978) (citing *NLRB v. Express Publ'g*, 312 U.S. 426, 437–38 (1941)).

The Supreme Court has explained that Congress did not intend federal courts to enforce NLRB orders that federal courts could not otherwise issue themselves. *Express Publ'g*, 312 U.S. at 435. "A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed . . . . [But the Supreme C]ourt will strike from an injunction decree restraints upon the commission of unlawful acts which are thus dissociated from those which a defendant has committed." *Id.* at 435–36.[2] Injunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible. *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004); *Davis v. Richmond,*

---

[1] A finding of persistent attempts by varying means to interfere with employee rights justifies a broad injunction by demonstrating "an attitude of opposition to the purposes of the Act." *NLRB v. Armour & Co.*, 154 F.2d 570, 578 (10th Cir. 1946). *See also May Dep't Stores Co. v. NLRB*, 326 U.S. 376, 392 (1945) (requiring "a clear determination by the Board of an attitude of opposition to the purposes of the Act to protect the rights of employees generally"). Such a determination must be supported by substantial evidence. *See Velocity Express*, 434 F.3d at 1201.

[2] The rule has been followed in this circuit. In *NLRB v. Seamprufe, Inc.*, 382 F.2d 820, 822 (10th Cir. 1967), we modified a broad order so that it would cover only the "unfair labor practices found to have been committed and other related unlawful acts."

*Fredricksburg & Potomac R.R.*, 803 F.2d 1322, 1328 (4th Cir. 1986); *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576–77 (6th Cir. 1984); *see also Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 83 (3d Cir. 1990); *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989); *Calvin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987).

The NLRB admits the cease-and-desist order issued here is so broad that it "will subject an employer to contempt sanctions for *any future* violations of the Act, not simply 'like and related' violations." Pet. Br. at 26 (emphasis added). Its finding of proclivity is based primarily on (1) the violations in this case, and (2) historical information request violations, some of which occurred in other parts of the country.

While a close call, given our standard of review I am satisfied that as a whole the evidence supports a finding that the Albuquerque division of the Postal Service engaged in "persistent attempts by varying methods" to violate the Act. In addition to the multiple information request violations in the Albuquerque division, there is evidence involving (1) the Postal Service's treatment of Mr. Orlovsky for an extended period of time, and (2) Mr. Smith's remarks to employees regarding his views about the benefits generated from the facility's union representatives.

Having said that, both the ALJ's order and the NLRB's modification impose a punishment that seems incommensurate with the crime. An order tailored to the conduct at issue is surely merited. However, as the dissenting NLRB member noted in this and a related case in objecting to "no future violation" orders, "Recidivism alone . . . is an insufficient basis for imposing a broad order." *United States Postal Serv.*, 345 NLRB No. 25, *6 (Aug. 27, 2005) (Schaumber, dissenting). Instead "the Supreme Court has made clear that broad orders must be reserved for egregious cases in which the violations are so severe or so numerous and varied as to truly manifest a general disregard for employees' fundamental employee rights." *United States Postal Serv.*, 345 NLRB No. 26, *3 n.4 (Aug. 27, 2005)(Schaumber, dissenting).

In the end, I concur because the NLRB's findings regarding the Postal Service's violations are entitled to deference, as is the appropriate level of injunctive relief based on these facts. The Postal Service is entitled to seek modification of the injunction as circumstances change.